In the United States District Court
Western District of Texas
San Antonio Division

| | | |
|---|---|---|
| JANE DOE | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Civil Action No. |
| | § | 5:21-cv-00369 |
| KERRVILLE INDEPENDENT | § | |
| SCHOOL DISTRICT | § | |
| | § | |
| Defendant. | § | |

# PLAINTIFF'S ORIGINAL COMPLAINT

To the Honorable Judge of Said Court:

Two male teachers at Tivy High School in Kerrville Independent School District consecutively sexually abused Jane Doe during her sophomore and junior years. When she had the audacity to make her first outcry, Kerrville ISD made her regret it.[1]  Her high

---

[1] Jane Doe files this action under a pseudonym as this action challenges governmental activity and prosecuting this action requires Jane to disclose information of the utmost intimacy, including sexual assaults perpetrated against her while she was a minor. Further detail supporting Jane's request to proceed anonymously is specifically set out later in this Complaint. Once Defendant has had the opportunity to answer this lawsuit, Jane will file a Motion for Leave

school Principal identified her by name to all of the Tivy teachers, told them she was the one to blame for the relationship, and continued to maintain that messaging for the rest of Jane Doe's high school career. Those first comments were at a training meeting about sexual abuse and harassment put on after Jane Doe's first abuser and a female teacher both were exposed for sexual misconduct.

Kerrville ISD's Assistant Superintendent was present when that statement was made. One of the teachers in that room began sexually abusing Jane Doe less than two months later. Kerrville ISD officials knew he was sexually abusing her for nearly five months. They tried to make her go to a different school. She refused. They were already in the process of forcing her out of school to the alternative high school when they finally had to put him on administrative leave because there were too many teacher and student reports of his sexual abuse to ignore.

## FACTS

### Freshman Year
### (Before Systematic Sexual Harassment)

1.      Jane Doe walked into Tivy High School on the first day of her freshman year with a goal and a plan for how to reach it. At age 14, she already knew what she wanted to be when she grew up— an Officer in the United States Air Force. She planned to take the Air Force Junior Reserve Officer Course all four years of high school and earn a

---

to Proceed by Pseudonym, supporting brief, and certificate of conference on the merits of that motion for the Court's consideration.

scholarship for the United States Air Force Academy in Colorado Springs or other college with an ROTC.

2.      She knew taking JROTC during high school allowed a cadet to develop rank that transferred with the cadet upon entry into the Air Force. And she knew even cadets that enlisted after high school entered the military at a higher rank and higher pay rate than people who did not participate in four years of JROTC. While enlisting out of high school was not Jane's first choice, she liked that it was an available backup plan for her future.

3.      As a freshman, Jane excelled in the JROTC program. Captain Hill and Chief Master Sergeant Fred Brunz taught Jane's fleet a lot, and Tivy's JROTC cadets worked together like a cohesive team. When Captain Hill announced he was retiring at the end of the year, the unit came together and put on a great performance at the June 2016 Cadet Leadership School to see their leader off.

4.      At the end of freshman year, Jane was on track to achieve her goal. She finished the year with a 100.800 grade point average, successfully completed her first year as an AS 1, and earned a promotion to officer grade.[2]

### First Semester, Sophomore Year
### (The Beginning of Systematic Sexual Harassment)

5.      Jane returned to Tivy excited to start her sophomore year of high school and her

---

[2] The JROTC cadets at Tivy were assigned to different class periods in the school day. Each class made up a Flight of cadets from different grades and with different ranks within JROTC. Cadets promoted to the Flight Staff served as the leaders and ranking members of their Flight. Four roles, in order of authority, made up the Flight Staff: Flight Commander (AS 2–4), Flight Sergeant (AS 2–4), Flight Element Leaders (AS 1–4), and Flight Guide (AS 1–4).

second year of JROTC. The additional responsibility that came with her promotion to Flight Sergeant (as a AS 2) was a welcomed challenge. She had spent time preparing for the position over the summer. Jane was ready to have a good year.

6.     Kerrville ISD hired Lieutenant Colonel Christopher K. Edwards as a JROTC instructor during the summer of 2016. His Texas Educator Certificate Emergency Permit for Secondary R.O.T.C. went into effect on August 1, 2016. When the school year started later that month, Lt. Colonel Edwards took his place working alongside Chief Brunz.

7.     Colonel Edwards, as his cadets referred to him, developed a close relationship with 15 year-old Jane Doe quickly that first semester. The two started spending more time together outside of regular school hours after Jane volunteered to help plan the Fall JROTC dance. Colonel Edwards confided in Jane, telling her that the other cadets were "pains in the ass" and that she was the only reason he made the drive from San Antonio to Kerrville every day.

### Second Semester, Sophomore Year
### (Living in Systematic Sexual Harassment)

8.     Around January 2017, Colonel Edwards started regularly asking Jane to come in early and stay late with him to "hang out". They spent time in the main JROTC classroom as well as the adjoining office with a window— both of which Colonel Edwards and Chief Brunz shared.

9.     That was when Colonel Edwards began asking Jane for hugs. His hugs were full frontal and lasted as long as fifteen minutes. He used the hugs as an opportunity to smell

her hair and grope her body. He used the hugs to fondle her buttocks.

10.     The close relationship Colonel Edwards cultivated with Jane did not go unnoticed by his fellow JROTC instructor, other teachers, or the Tivy High School student body.

11.     Chief Brunz observed the frequent personal conversations Colonel Edwards had with Jane. Chief Brunz also noticed that Colonel Edwards gave Jane a lot of hugs. He told Colonel Edwards hugging Jane that way was unprofessional.

12.     Kerrville ISD Spanish teacher Mandy Parton also had frequent discussions with Colonel Edwards and Colonel Edwards' wife about Jane throughout the 2016–2017 school year. Parton had known the couple since college. She was a bridesmaid in their wedding. The Spanish teacher told Colonel Edwards multiple times to "be careful with [Jane] because she was a very needy girl." Parton told the Colonel's wife the same thing.

13.     Parton had on-going conversations with Colonel Edwards about the way he conducted himself with female students. During those conversations, Parton told him: "They may look like grown-ups, but they have the capacity of 12 year-olds."

14.     Colonel Edwards' sexually inappropriate behavior with Jane continued to escalate and became even more flagrant. He started emailing her from his Kerrville ISD email and texting her phone at all hours of the day, on weekends, and about topics that had nothing to do with the JROTC. He started telling her sexual things that he wanted to do to her. For example: "I want to tie you up in my [JROTC] office and fuck her with his rock hard cock." Another example, while holding her upper thigh: "In two years, you will be mine."

15.     By April 2017, when the entire JROTC unit went on an overnight field trip, Colonel Edwards was emailing Jane from his school email account multiple times a day. While traveling on separate buses on the way to their destination, Colonel Edwards emailed back and forth with Jane for over three hours. Expressions of love were made.

16.     When they got to the field trip destination, Colonel Edwards told Jane about how he wanted to take her to his room for sex. He made sure they sat together on the bus ride home from the field trip. With all of the other cadets and chaperones, Colonel Edwards placed a blanket over the two of them. Under the blanket, Colonel Edwards groped Jane's body, including touching her vagina over her clothes.

17.     The other JROTC cadets noticed the escalation and the rumors about what they had seen and heard on the bus caught fire. Teachers like Mandy Parton and other Kerrville ISD employees noticed the changes as well.

18.     On May 3, 2017, at about 5:45pm, Colonel Edwards, Jane Doe, and another female cadet were in the JROTC room talking and hanging out while Jane used glue on a project. Some of the glue accidentally got on her knee. She was trying to clean it off with Cadet J.H. came into the room. In front of everyone present, he said: "Are you making knee pads? It looks like you just got done giving Colonel a BJ." (BJ is an abbreviation for *blow job*, which is a vulgar and offensive term for a female putting a man's penis in her mouth for his sexual pleasure.)

19.     Colonel Edwards started yelling at the cadet. After the other students left, he told

Jane he needed to report what happened and that he was worried he would get in trouble. The next day, on May 4, 2017, Colonel Edwards, Cadet J.H., the female cadet witness, and Jane gave individual written statements about the incident to Tivy High School Vice Principal Chris Cook. All of the statements acknowledged the sexually explicit joke and that it referred to Colonel Edwards having a sexual relationship with Jane Doe.[3] The Colonel texted Jane a picture of the statement because he was worried that he had been discovered. His written statement was not given to Jane.

20.     No one at Kerrville ISD did anything to respond to the admitting sexual harassment and the sexual abuse to which it referred.

21.     That emboldened the JROTC cadets throughout the rest of the school year and summer. Colonel Edwards' sexual behavior continued to escalate and so did the sexual harassment from Jane's fellow cadets.

### Junior Year
### (Living in Systematic Sexual Harassment)

---

[3] On March 24, 2021, Jane Doe received a partial set of records from her Kerrville ISD education records. She requested a complete copy of her education records in writing in October 2020. The District pushed back. Then, it sent her a few pages of print outs and a copy of its letter requesting permission to withhold all contents related to Jane being sexually abused by two separate male teachers because producing those records (which met the District's definition of *student records*) to Jane would violate the Public Information Act. With limited exception, that request was rejected because Jane was, as Kerrville ISD knew, not asking as a member of the public. After additional delay, while Kerrville ISD considered suing the Texas Attorney General to get that decision reversed, the District produced 161 pages of records on March 24, 2021 (around 2:00 pm in the afternoon).

Those records have glaring omissions. They reference notes and documents that would not have been subject to the exceptions allowed by the Attorney General.

22.     Jane returned to Tivy High School her junior year a different person. Colonel Edwards didn't stop making sexual advances towards her during the summer. Instead, he called her almost daily, and talked to her for hours. He told her that he "couldn't wait until she was legal" and talked about wanting sex from her a lot. He asked her to moan for him on their phone calls.

23.     The Colonel had to work at Tivy during the week most of the summer. The rest of the people working were District administrators like principals. He called Jane up to hang out with him, on campus while he worked many times. Tivy administrators saw them together, and they knew she was only there to keep him company.

24.     As Fleet Commander, Jane was going to be in charge of her JROTC Fleet. Her Fleet Sergeant, one of the main JROTC harassers, told the freshmen cadets that Jane was a slut, a whore, and openly discussed Colonel Edwards' sexual desire for her with them. The freshman wouldn't listen to her. The constant comments from the JROTC cadets made her feel like she was suffocating. Colonel Edwards made her feel like she was suffocating.

25.     The afternoon of September 7, Jane Doe outcried. She told Chief Brunz as much as she could spit out about the emails, the touching, the requests for sex, the other cadets. Chief Brunz left Jane. He approached Colonel Edwards and told Edwards that they were both going to the office to turn him in to Principal Shelby Balser.

26.     Balsar took the oral report, asked for a written report from Brunz, and left the

office for the day. She phoned Assistant Superintendent Wade Ivy on her way out. A short memo from Brunz was on her chair when she got to work in the morning. They took Jane Doe's statement the next day and she told them everything she possibly could think of from the entire, awful experience. So did her mother, who was notified by the District the day after the outcry.

27.     On September 8th, after hearing the allegations in more detail, Colonel Edwards tried make a statement about the allegations to Ivy, Balser, and Cook. Ivy stopped him from speaking. The District twice declined to take a statement or interview Colonel Edwards. Instead, they revealed the evidence they had to his lawyer through their lawyer and offered Colonel Edward the choice to resign or be terminated. (That non-privileged communication is one of the missing documents from the education records.)

28.     Colonel Edwards chose to resign. The District later told the Texas Education Agency they were not making the resignation/termination offer due to sexual misconduct.

29.     The sexual harassment from the JROTC cadets (and other students) only got worse after the District finally had to dismiss Colonel Edwards after the September 7th outcry. They told her she raped their favorite teacher. Made jokes about her being pregnant by her abuser. Made jokes about her having to have abortions.

30.     The told her to die. Repeatedly.

31.     As detailed above and below, Jane told Kerrville ISD officials about the

harassment she dealt with leading up to the outcry and what came after.

32.     Kerrville ISD administrators told Jane Doe to quit JROTC.

33.     And she did. She quit JROTC. She let go of her plan to get a scholarship to the Air Force Academy, and she gave up her dream.

34.     When Jane Doe had the audacity to make an outcry about the first sexual abuser, Kerrville ISD made her regret it. The school district identified her as the student who outcried *by name to every single teacher* at Tivy High School during a school-wide teacher meeting.[4] Principal Shelby Balsar (in the presence of at least one Assistant Superintendent) told the Tivy teachers: "Jane Doe was *complicit* in the inappropriate relationship."

35.     That pointed the second Kerrville ISD teacher-child abuser directly to Jane. Within two months of her outcry, the Tivy math teacher had Jane in his grasp. Principal Balsar observed as the relationship heated up and told her employee: "*She* will do it again. *She'll* do it to you." The predator did not even try to hide it from his bosses. Kerrville ISD administrators and other Tivy teachers picked up on the inappropriate sexual intimacy. So did the students at Tivy High School.

36.     On December 6, 2017, math teacher Aaron CHatagnier copied Principal Balser on an email to teacher Julie Jones (and his department head) acting aggressive and

---

[4] The male student sexual abuse victim of the third Tivy High School educator (a female) was not identified to the teachers by name or called *complicit* at that meeting even though her actions were also known at the time.

possessive of Jane Doe and referencing both teachers' knowledge of her prior abuse. The email is attached to this Complaint as Exhibit 1.

37.     On February 15, 2018, Dr. Kendall Young (Kerrville ISD counselor) emailed Balser, forwarding a December 12, 2018 email from Dr. Young to Chatagnier in which she stated she is sending an "extremely upset" Jane Doe to him to comfort since he is aware of Jane Doe's prior abuse. The email is attached as Exhibit 2.

38.     On Marche 2, 2018, Dr. Young emailed Principal Balser describing what Dr. Young observed the previous day: "When I entered the classroom (6th period) [Jane] was kneeling on the ground looking up to Mr. Chatagnier in his chair . . . neither of them even noticed I had entered the classroom . . . I spoke to you [Balser] about the situation because she is not supposed to be in his classroom 5th-7th as he has classes during that time . . . My other concern is that [Jane] is forming an unhealthy dependency on a staff member who is unable to set appropriate boundaries with her. I felt highly uncomfortable when I walked into the classroom during 6th period as she was kneeling closely to his chair. . . ."

39.     The math teacher's sexual relationship with Jane was the talk of teachers and students at Tivy High School.  Kerrville ISD Assistant Superintendent Wade Ivy called a meeting with Jane Doe and her parents. Assistant Superintendent Ivy *did not* tell Jane's parents that district administration had received multiple reports of a sexual relationship between the math teacher and their minor child. He told them Jane and the Kerrville ISD

math teacher needed to start meeting for tutoring off campus and suggested the library study rooms at nearby Schreiner's University because Jane meeting with the teacher at school had the potential "to make *Kerrville ISD look bad*."

40.     Assistant Superintendent Wade Ivy's instructions gave Jane's math teacher the opportunity to go further with the abuse. They were in a Schreiner University library study room for math tutoring the first time the math teacher convinced Jane to have sexual intercourse with him.

41.     District employees started pressuring Jane Doe to transfer to the school district's alternative high school in February or March of 2018. Jane Doe refused. She had given up JROTC but she did not want to give up real, regular high school no matter how hard hostile the Principal, teachers, and students made Tivy.

42.     On April 11, 2018, Kerrville ISD added an "at risk" label Jane Doe's records.[5] It said she was at risk for having a grade lower than 70 in at least two courses during the prior or current semester. Jane Doe's class rank generated the exact same day was 47th out of 353 students.



---

[5] Four months after the District's actual knowledge and two weeks before it finally placed Chatagnier on administrative leave.

43.     Three days after finally placing Chatagnier on leave (and giving him the option to resign rather than be terminated) Kerrville ISD transferred Jane Doe to the District's

```
Date of Class Rank: 01/29/2018
Rank: 47  Class Size: 353
GPA: 97.250
Quartile: 1
Date Printed: 04/11/2018
```

alternative high school. She did not have any course averages prior to transfer or after. Jane did not receive the same quality of education at the alternative high school, and she did not graduate with a class rank at all. They didn't give ranks at that high school.

## PARTIES

44.     Jane Doe is a female and was a minor at all times relevant to this case. She reached the age of majority in 2019. This action has been filed within two years of her eighteenth birthday. Her specific birth date is not stated to protect her anonymity.

45.     At all relevant times, Jane Doe was a resident of Kerr County, Texas.

46.     Jane Doe attended Kerrville Independent School District at the time of the events described in this Complaint.

47.     She is now an alumni and former student of Kerrville Independent School District As discussed in further detail below, Kerrville Independent School District has continued a pattern of prohibited retaliation against Jane Doe to this day.

48.     Kerrville Independent School District located in Kerr County, Texas. It may be

served with process by serving Curtis Finley, President of the Kerrville Independent School District Board of Trustees or Superintendent Mark J. Foust, Ed.D., 1009 Barnett Street, Kerrville, Texas 78028.

## *JURISDICTION AND VENUE*

49.　This Court has subject matter jurisdiction over Jane Doe's claims against Kerrville Independent School District pursuant to 28. U.S.C. § 1331 which gives federal district courts jurisdiction over all civil actions arising under the Constitution, laws, and treaties of the United States.

50.　This Court also has subject matter jurisdiction over Jane Doe's claims against Kerrville Independent School District pursuant to 28 U.S.C. § 1343 which gives federal district courts jurisdiction over: (a) any civil action authorized by law to be brought by any person to redress the deprivation, under color of any state law, statute, ordinance, regulation, custom or usage, of any right, privilege, or immunity secured by the Constitution of the United States or by any Act of Congress providing for equal rights of citizens or of all persons within the jurisdiction of the United States; and (b) any civil action to recover damages or to secure equitable relief under any Act of Congress providing for the protection of a person's civil rights.

51.　Jane Doe brings this action to redress a hostile educational environment and retaliation for the exercise of her civil rights pursuant to Title IX of the Education Amendments of 1972, 20 U.S.C. § 1681.

52.     This is also an action to redress the deprivation of Jane Doe's constitutional rights under the Fourteenth Amendment of the United States Constitution pursuant to 42 U.S.C. § 1983.

53.     Venue is proper in this District and this Division pursuant to 28 U.S.C. § 1391(b), since Kerrville Independent School District resides in this judicial district and a substantial part of the events or omissions giving rise to these claims occurred in this District.

## *CAUSES OF ACTION*

### Count One
### Title IX Hostile Environment Resulting from
### Teacher–Student Sexual Harassment

54.     Jane Doe's Title IX hostile environment claim resulting from teacher-student sexual harassment is based on the paragraphs set out in this Complaint.

55.     Kerrville ISD subjected Jane Doe to a hostile educational environment as the result of two different types of teacher-student sexual harassment: (1) teacher-student sexual abuse from two different teachers, and (2) teacher-student sexual harassment by teachers and Tivy High School administrators (Principal Shelby Balser in particular).

56.     Title IX of the Education Amendments of 1972 prohibits sexual discrimination in public school districts that receive federal funds. It states, in relevant part:

> No person in the United States shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving Federal financial assistance . . . .

20 U.S.C. § 1681(a).

57.     Its definition of "educational institution" includes public preschools, elementary, and secondary schools as well as the school districts.  20 U.S.C. § 1681(c).

58.     Kerrville Independent School District is and was an educational institution as defined by Title IX, and it received federal financial assistance at all times relevant to this action.

59.     Sexual harassment and sexual assault within a school or within a school program are forms of sexual discrimination prohibited by Title IX. *Gebser v. Lago Vista Indep. Sch. Dist.*, 524 U.S. 274, 281 (1989).

60.     As a school district that receives federal funds, Kerrville Independent School District is liable to Jane Doe because it had actual knowledge that Jane Doe was sexually abused and harassed by her JROTC teacher Lt. Colonel Christopher Edwards and responded with deliberate indifference. *Id.* The sexual abuse and harassment at the hands of her JROTC teacher was so severe, pervasive, and objectively offensive that it deprived Jane Doe of educational benefits.

61.     More specifically, Kerrville ISD had actual knowledge that Lt. Colonel Christopher Edwards subjected Jane Doe to sexual abuse, harassment, and misconduct many months before Jane Doe's September 2017 outcry to JROTC Chief Master Sergeant Fred Brunz. Factual support for Kerrville ISD's actual knowledge months in advance of Jane Doe's outcry includes, but is not limited to:

> a.  Hundreds of inappropriate emails written to Jane Doe from his Kerrville ISD email address that date back to at least March 2017.

b. Overt, textbook grooming behaviors displayed in front of school employees with the authority to take corrective action.

c. On information and belief, more than one occasion of sexually suggestive physical touching displayed in front of school employees with the authority to take corrective action.

d. Written statements provided by Colonel Edwards, Jane Doe, and a female JROTC cadet reporting sexually harassing jokes and statements made by a male JROTC cadet about Jane Doe giving Colonel Edwards a blow job (putting his penis in her mouth). Tivy High School Vice Principal received those statements on May 4, 2017.

e. The statement made by Colonel Edwards was removed from the records Kerrville ISD provided Jane Doe. On information and belief, the content of that statement gave Kerrville ISD actual notice of the inappropriate and sexual nature of Colonel Edwards' actions towards Jane Doe.

f. Kerrville ISD employees with authority to take corrective action witnessing Colonel Edwards entertaining Jane Doe at Tivy High School during inappropriate times like late night hours and Summer break.

62.     At all relevant times, Colonel Edwards was under Kerrville ISD's control both as an employee and as a result the sexual harassment that took place on District property, at District-sponsored events, using a District email address, and using District personal property like computers.

63.     As detailed above, Colonel Edwards' actions towards Jane Doe were sexually motivated. He rubbed her feet, put his hands up her shirt, rubbed her upper thighs, groped her buttocks, made her kiss his cheek, and pressed his erect penis against her while hugging her for long periods of time. Colonel Edwards said things to Jane Doe like, "I want to tie you up in my [JROTC] office and fuck her with his rock hard cock."

64. After having actual knowledge of Colonel Edwards' sexually harassing and abusive behavior, multiple Kerrville ISD employees responded with deliberate indifference. Tivy High School officials, including Vice Principal Chris Cook and Chief Master Sergeant Fred Brunz, had knowledge dating back to the Spring semester of Jane Doe's sophomore year. Kerrville ISD's Board Policy FFH (Exhibit 3) required to take action, including, but not limited to:

    a.  Tivy High School officials to <u>immediately</u> report what they knew to the District's Title IX Coordinator, Superintendent Mark Foust.

    b. Title IX Coordinator and Superintendent Mark Foust make a determination whether the allegations, if proven, would constitute prohibited sexual harassment. (These information Tivy officials had definitely met the policy's definition of sexual harassment.)

    c. Immediately undertake an investigation (with exceptions that never had a chance to apply).

    d. Promptly take interim actions calculated to address the discrimination, without regard for criminal or regulatory investigation.

65. Tivy High School officials with actual knowledge that dated back to Spring semester 2017 did not take any actions at all. They did nothing. As a result of those officials doing nothing, Colonel Edwards continued to sexually harass Jane Doe on and off campus throughout the Summer break. He spent long hours talking to her on the phone, asking her to moan and making sexually explicit comments. And he coaxed her to make frequent weekday visits to Tivy High School even though she was not in school. District officials were on campus working and they observed Jane Doe with Colonel Edwards multiple times for the purpose of hanging out. His physical and suggestive

behavior continued.

66.     Further, it is undeniable that Kerrville ISD employees had actual knowledge of the sexual abuse on September 7, 2017. Jane Doe's outcry and subsequent statements described the sexual abuse (physical, emotional, and verbal) in detail and gave examples of specific incidents. Although Kerrville ISD took some actions, including placing Colonel Edwards on administrative leave, it responded again with deliberate indifference.

67.     A school district acts with deliberate indifference when its response to sexual harassment is clearly unreasonable in light of the known circumstances.

68.     Even though the District placed Edwards on leave and took some steps to investigate, Kerrville ISD's response was clearly unreasonable in light of the known circumstances. When a school district has knowledge that its remedial action is inadequate and ineffective, it is required to take reasonable action in light of those circumstances to eliminate the hostile environment. A school district acts clearly unreasonably when it does all or any of the following:

   a.  Responds in a manner that exposes the student to additional sexual harassment,

   b.  Responds in a manner that places the student in danger of additional sexual abuse by the original perpetrator or another perpetrator under the school districts control,

   c.  Knowingly and recklessly creates a hostile environment with its response,

   d.  Using the District's response to interfere with potential criminal prosecution,

   e.  Collecting evidence and documenting an investigation for the purpose of

protecting the employee from criminal prosecution,

    f.   Collecting evidence and documenting an investigation for the purpose of hiding or obscuring information about actual knowledge and deliberate indifference, and

    g.   Maintaining an official policy of deliberate indifference (as described in Count Four).

69.    Kerrville ISD did all of those things in responding to Jane Doe's September 6 outcry. And those actions were done with the Superintendent/Title IX Coordinator's permission and awareness. (Based on Policy FFH, Superintendent Mark Foust presumably delegated the investigation to Ivy, Balser, and Cook.)

70.    The Principal and Assistant Superintendent identified Jane Doe as the student victim to the entire teaching staff and told them that Jane Doe was to blame. That happened **at a sexual abuse/sexual harassment training** that Kerrville ISD presumably conducted in response to *two* separate incidents of educator misconduct that resulted in two teachers leaving school within a week of each other. In other words, the entire Tivy teaching staff saw **their boss**— publicly identify a child sexual abuse victim by name unnecessarily, represented that children can consent to sexual abuse by an adult, obliterate the child's credibility, and give the entire teaching staff permission to do the same— in front of **her boss**.

71.    By identifying Jane Doe in that way and calling her *complicit* even once, Kerrville ISD exposed her to additional sexual harassment in the form of sexual abuse, teacher sexual harassment, and student-on-student sexual harassment. And sadly, that is exactly

what happened after the meeting ended.

72. The District's deliberate indifference to known sexual abuse and harassment by Lt. Colonel Christopher Edwards effectively barred Jane Doe from access to educational benefits. As detailed both above and below, Colonel Edwards' abuse made Jane Doe a target for sexual harassment from her peers, especially those in the JROTC. The harassment started in Spring 2017. The JROTC cadets knew about their fellow classmate's blow job remarks and that Colonel Edwards, Jane Doe, and a witness formally reported the event. They saw and recognized that Kerrville ISD did nothing to investigate the relationship or the student even though the accused was the only individual that denied what happened.

73. The inaction allowed Colonel Edwards to continue to openly sexually abuse Jane Doe, which kept the JROTC cadets spreading sexually explicit rumors and making sexually explicit jokes through their Summer JROTC activities and into the new school year. All of it made Jane want to abandon JROTC and her dream of becoming an officer in the United States Air Force. That inner battle, on top the emotional complexity of coming forward as a victim of abuse, and the trauma of receiving zero District response after reporting a joke about the sexual abuse made her feel like she was suffocating.

74. The sexual harassment from the JROTC cadets (and other students) only got worse after the District finally had to dismiss Colonel Edwards after the September 7th outcry. They told her she raped their favorite teacher. Made jokes about her being

pregnant by her abuser. Made jokes about her having to have abortions.

75.     The told her to die. Repeatedly.

76.     As detailed above and below, Jane told Kerrville ISD officials about the harassment she dealt with leading up to the outcry and what came after.

77.     Kerrville ISD administrators told Jane Doe to quit JROTC.

78.     And she did. She quit JROTC. She let go of her plan to get a scholarship to the Air Force Academy, and she gave up her dream.

79.     To this day, Kerrville ISD has not made a single effort to respond to that suffocating, persistent, vicious sexual harassment (that pervaded far beyond the JROTC cadets and even the high school walls).

80.     As a school district that receives federal funds, Kerrville Independent School District is also liable to Jane Doe because it had actual knowledge that Jane Doe (now a recent victim of sexual abuse) was sexually abused and harassed by her math teacher Aaron Chatagnier and responded with deliberate indifference. *Id.* The sexual abuse and harassment at the hands of her math teacher was so severe, pervasive, and objectively offensive that it deprived Jane Doe of educational benefits.

81.     More specifically, Kerrville ISD had actual knowledge that Aaron Chatagnier subjected Jane Doe to sexual abuse, harassment, and misconduct many months before placing him on leave in late April 2018. Factual support for Kerrville ISD's actual knowledge months in advance of that date includes, but is not limited to:

a. Overt, textbook grooming behaviors displayed in front of school employees with the authority to take corrective action.

b. Displaying sexually suggestive physical touching displayed in front of school employees with the authority to take corrective action.

c. Chatagnier's December 6, 2017 email to teacher Julie Jones (copying Balser and his department head) acting aggressive and possessive of Jane Doe and referencing both teachers' knowledge of her prior abuse.

d. February 15, 2018, email from Dr. Kendall Young (Kerrville ISD counselor) to Balser, forwarding Dr. Young's December 6, 2018 email to Chatagnier in which she states she is sending an "extremely upset" Jane Doe to him to comfort since he is aware of Jane Doe's prior abuse.

e. Marche 2, 2018 email from Dr. Young to Principal Balser describing what Dr. Young observed the previous day: "When I entered the classroom (6th period) [Jane] was kneeling on the ground looking up to Mr. Chatagnier in his chair . . . neither of them even noticed I had entered the classroom . . . I spoke to you [Balser] about the situation because she is not supposed to be in his classroom 5th-7th as he has classes during that time . . . My other concern is that [Jane] is forming an unhealthy dependency on a staff member who is unable to set appropriate boundaries with her. I felt highly uncomfortable when I walked into the classroom during 6th period as she was kneeling closely to his chair. . . ."

f. Assistant Principal Ivy summoning Jane Doe and her parents for a meeting in which Jane needed to start meeting Chatagnier for tutoring off campus and suggested the library study rooms at nearby Schreiner's University because Jane meeting with the teacher at school had the potential "to make *Kerrville ISD look bad*." (February or March 2018)

g. Kerrville ISD employees with authority to take corrective action witnessing Chatagnier and Jane Doe wearing matching t-shirts from car show that took place the prior weekend. (Early April 2018)

82.    At all relevant times, Aaron Chatagnier was under Kerrville ISD's control both as

an employee and as a result the sexual abuse and harassment that took place on District

property, at District-sponsored events, using a District email address, and while tutoring Jane off campus at the instruction of Assistant Superintendent Wade Ivy approximately two months prior to placing Chatagnier on leave.

83.     As detailed above, Aaron Chatagnier's actions towards Jane Doe were sexually motivated. He coaxed her into sexual contact, including sexual intercourse, on multiple occasions between December 2017 and April 27, 2018. He made elicit sexual comments and requests to Jane as well.

84.     After having actual knowledge of Aaron Chatagnier's sexually harassing and abusive behavior, multiple high-level Kerrville ISD employees responded with deliberate indifference. As of at least, December 6, 2017, Kerrville ISD knew a third-year male math teacher was acting aggressively possessive of a female child with a history of recent sexual abuse and simultaneously referencing his knowledge the sexual abuse occurred in **_written communications_** to other teachers, his Principal, and his department head.

85.     Kerrville ISD's Board Policy FFH required Assistant Superintendent Ivy, Principal Shelby Balser, and Dr. Young to take action, including, but not limited to:

   a.  Tivy High School officials to <u>immediately </u>report what they knew to the District's Title IX Coordinator, Superintendent Mark Foust.

   b.  Title IX Coordinator and Superintendent Mark Foust make a determination whether the allegations, if proven, would constitute prohibited sexual harassment. (These information Tivy officials had definitely met the policy's definition of sexual harassment.)

   c.  Immediately undertake an investigation (with exceptions that never had a chance to apply).

      d. Promptly take interim actions calculated to address the discrimination, without regard for criminal or regulatory investigation.

86.     They did not do any of those things. Instead, Dr. Young sent the extremely upset recent victim of sexual abuse to a male third-year math teacher for comfort related to emotional damage done by her prior abuser. Assistant Superintendent Wade Ivy told that math teacher to "take it off campus" and then told the entire Doe family that Jane getting tutored by a male teacher on campus had the potential to make the District look bad. Principal Shelby Balser responded by cautioning him—*She did it to him. She'll do it to you.* That told Aaron Chatagnier Kerrville ISD would never believe Jane Doe if she dared to make an outcry again.

87.     Kerrville ISD's failure respond to its actual knowledge of a second teacher sexually abusing Jane Doe for almost five months is deliberate indifference. The affirmative actions Kerrville ISD took that exposed Jane Doe to Chatagnier's abuse, encouraged the obviously sexually abusive relationship, and then push the relationship and Jane Doe off campus to avoid scandal were clearly unreasonable under the circumstances. Kerrville ISD acted with deliberate indifference and extreme recklessness.

88.     Moreover, Kerrville ISD's deliberate indifference robbed Jane Doe of more educational benefits. District employees started pressuring Jane Doe to transfer to the school district's alternative high school in February or March of 2018. Jane Doe refused. She had given up JROTC but she did not want to give up real, regular high school no matter how hard hostile the Principal, teachers, and students made Tivy.

89.     On April 11, 2018, Kerrville ISD added an "at risk" label Jane Doe's records.[6] It said she was at risk because  she had a grade point average lower than 70 in at least two courses during the prior or current semester. Jane Doe's class rank generated the exact same day was 47th out of 353 students. Three days after finally placing Chatagnier on leave (and giving him the option to resign rather than be terminated) Kerrville ISD transferred Jane Doe to the District's alternative high school. She did not have any courses with a grade point average less than 70 at the time of or prior to transfer. Jane did not receive the same quality of education at the alternative high school, and she did not graduate with a class rank at all. They didn't give ranks at that high school.

90.     Kerrville's actions deprived her of the really realistic opportunity to move up in rank twelve places and gain eligibility to automatic early admission opportunities available at several Texas colleges and universities. This deliberate indifference proximately caused the damages Jane Doe requests below.

91.     As stated in great detail above and below, Kerrville ISD District-level officials had actual knowledge of and participated in teacher-student sexual harassment. Principal Shelby Balser set the example for her teachers in front of her own boss, the second highest employee in Kerrville ISD. No one ever responded the culture of sexual harassment and hostility the teachers at Tivy directed at Jane Doe from September 2017 through her graduation. Not to this day. That is and was deliberate indifference. It

---

[6] Four months after the District's actual knowledge and two weeks before it finally placed Chatagnier on administrative leave.

proximately caused the damages Jane Doe seeks below.

## Count Two
## Title IX Hostile Environment Resulting
## from Student—on—Student Sexual Harassment

92.     Jane Doe's Title IX hostile environment claim resulting from student-on-student sexual harassment is based on the paragraphs set out in this Complaint.

93.     As stated in great detail above and below, Kerrville ISD District-level officials had actual knowledge of student-on-student sexual harassment directed towards Jane Doe from Spring 2017 until she graduated from Kerrville ISD's alternative high school.

94.     No one ever responded the culture of sexual harassment and hostility the students at Tivy directed at Jane Doe from Spring 2017 through her graduation. Not to this day. That is and was deliberate indifference. It proximately caused the damages Jane Doe seeks below.

## Count Three
## Title IX Retaliation

95.     Jane Doe's Title IX retaliation claim is based on the paragraphs set out in this Complaint.

96.     Title IX prohibits school districts that receive federal funds from retaliating against students or other individuals who engage in an activity protected by Title IX. And, that prohibition applied to Kerrville ISD at all relevant times.

97.     Reports of sexual harassment, sexual assault, hostile environment, sexual

discrimination, requesting enforcement of one's rights under Title IX, and retaliation itself are all protected activities under Title IX. Jane Doe has engaged in all of these protected activities as described in detail above. Those protected acts include, but are not limited to:

    a. Outcries of sexual abuse by both teachers,

    b. Reporting sexual harassment by teachers,

    c. Reporting sexual harassment by peers,

    d. Insisting to be provided Title IX rights, such as being provided information and documentation related to the Kerrville ISD's response to her sexual discrimination reports,

    e. Requesting to be allowed to stay at Tivy High School after Kerrville ISD asked her to leave,

    f. Requesting Kerrville ISD respond to previous reports of the hostile environment created by other students attacking her with sexual slurs and taunts because of the sexual abuse her teachers perpetrated,

    g. Requesting Kerrville ISD respond to repeated reports of the hostile environment created by her teachers opening referring to her abuse in front of other students and punishing her for reporting it,

    h. Requesting interim measures,

    i. Asking Principal Balsar not to call her *Lolita*, and

    j. Even asking for a copy of her student education records in order to investigate her potential claims against Kerrville ISD.

98.    Kerrville ISD responded to Jane Doe's protected actions with retaliation throughout her time enrolled in the District and as recently as March 2021. As described in greater detail above, Kerrville ISD blamed Jane for its teachers sexually abusing her. Principal Shelby Balser identified her to every teacher at Tivy High School during the

sexual abuse and harassment "training" meeting within weeks of her outcry about Colonel Edwards. The school principal that was supposed to protect her told those teachers Jane Doe was complicit at that training.

99.     Teachers, aware of Jane's past and then-existing abuse, made comments that mimicked Balsar's own words in class in front of other students. One refused to allow Jane to go to the restroom when her menstrual cycle started in class, even when Jane told the teacher that she was beginning to bleed through her clothing.

100.    When Jane told Ivy, Balsar, Cook, and members of the counseling department that JROTC students hurling sexual slurs and telling her to kill herself for reporting their beloved instructor, Kerrville ISD told her to drop ROTC.

101.    When Aaron Chatagnier began grooming and cultivating his sexually abusive relationship with Jane Doe, Principal Balsar told him *she did it to him, she'll do it to you*, it reaffirmed Jane as a vulnerable target. Then, instead of stopping the math teacher from sexually abusing the Kerrville ISD student, Kerrville ISD administrators started following her in the halls, limiting her access to on-campus educational assistances, and tracking her on the school's video cameras.

102.    And when she refused to transfer schools to Kerrville's alternative education high school, Kerrville ISD labeled her "at risk" for having below a grade below 70 in at least two courses during the prior or current semester. According to Kerrville ISD's own records, despite being the subject of repeated sexual abuse, **Jane Doe ranked 47th in**

**her class of 353 students on the day they gave her that label**. After the District "discovered" Aaron Chatagnier's sexual abuse later that month, it forced her to transfer to the alternative high school due to at risk status for grades even though it had already removed its predatorial teacher from campus.

103.    Simply put, it is impossible to list even half of the adverse actions Kerrville ISD officials took. The District's retaliation went up to the highest levels and it continues today. In October 2020, Jane Doe submitted a written request for her student education record that complied District policies. Rather than produce what District policy said she was entitled to receive, Kerrville ISD Superintendent and Assistant Superintendent sent a limited file that was stripped of all information related to the events detailed in this Complaint. Then, completely ignoring Jane Doe's superior right of access, Kerrville ISD sent a letter to the Texas Attorney General asking for permission to withhold all of that material under the Public Information Act.

104.    With little exception, the request was rejected. Jane received what Kerrville ISD claimed was the rest (subject to the very limited exceptions) of her education records on March 24, 2021. Those records make clear she still does not have significant parts of the file, that were supposed to be turned over. Jane Doe attended Kerrville ISD from kindergarten to graduation.

105.    The causal link between Jane Doe's protected activities and Kerrville ISD's retaliatory actions requires little to no inference.

106. Kerrville ISD failed Jane Doe numerous times while she was a child entrusted to its care. When she gather the courage to tell an adult about being abused, Kerrville ISD blamed Jane Doe for the sexually hostile environment it created.

107. The retaliation Jane Doe experienced for asking the District to comply with its obligations under Title IX, proximately caused the damages requested below.

### Count Four
### 42 U.S.C. § 1983 Deprivation of the
### Fourteenth Amendment Right to Equal Protection

108. Jane Doe's 42 U.S.C. § 1983 action for the deprivations of her Fourteenth Amendment to the United States Constitution right to equal protection the is based on the paragraphs in this Complaint.

109. This claim is based on a Substantive Due Process violation in contravention of the Fourteenth Amendment to the United States Constitution pursuant to 42 U.S.C. § 1983. Violations of the Fourteenth Amendment by local government state actors create a cause of action under 42 U.S.C. §1983, which provides:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . . subjects, or causes to be subjected, any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

110. The Supreme Court of the United States has held that Congress intended § 1983 to apply to local government entities as well as persons. *Monell vs. New York City Dep't of*

*Soc. Servs.*, 436 U.S. 658, 691–694 (1978). Kerrville Independent School District qualifies as "persons" under § 1983. *Id.* at 690.

111.     At all relevant times, Kerrville ISD was aware of Jane Doe's rights under the Equal Protection Clause as those rights were clearly established at the time of the Board's violations.

112.     Decades before the events at issue, the United States Court of Appeals for the Fifth Circuit held that "schoolchildren have a liberty interest in their bodily integrity that is protected by the Due Process Clause of the Fourteenth Amendment and [] physical sexual abuse by a school employee violates that right." *Doe v. Taylor Indep. Sch. Dist.*, 15 F.3d 443, 445 (5th Cir. 1994). The court reasoned: "If the Constitution protects a schoolchild against being tied to a chair or against arbitrary paddlings, then surely the Constitution protects a schoolchild from physical sexual abuse." *Id.* at 451.

113.     The Kerrville ISD Board of Trustees is the policymaking body for the school district. At all times, the Kerrville Board of Trustees, Superintendent/Title IX Coordinator Mark Foust, Assistant Superintendent Wade Ivy, Principal Shelby Balser, and Vice Principal Chris Cook were all state actors acting under the color of state law. Their actions, as described above, can be fairly said to represent official policy, custom, and practice.

114.     Here, Kerrville ISD's policymaking body adopted official policies for responding to reports of sexual abuse, sexual harassment, and educator sexual misconduct in an

unconstitutional manner and with deliberate indifference as well as callus disregard for their known or obvious consequences.

115. It was Kerrville ISD's widespread practice and well-settled custom to respond to reports of sexual abuse, sexual harassment, and educator sexual misconduct by the following, individually and in combination:

   a. Ignoring such reports,

   b. Discouraging reporting,

   c. Selectively gathering evidence and documenting reports to minimize potential future liability,

   d. Minimizing or recasting the information reported in a non-discriminatory light,

   e. Delaying investigations,

   f. Delaying or avoiding complying with mandatory reporting laws,

   g. Retaliating against student victims of sexual abuse and harassment,

   h. Exposing student victims to potential future abuse by identifying them to teachers,

   i. Instructing employees that the student victim was to blame or complicit in his/her own abuse,

   j. Encouraging student victims to leave school or change activities without reporting and/or following reporting,

   k. Taking actions to stop an accused employee from confessing in front of law enforcement,

   l. Denying or delaying student victims/their representatives access to student education records, including information about the District's handling of reports involving that student, and

   m. Taking steps to bring about the removal of a student victim from their

learning environment against their wishes.

116.    Kerrville ISD adopted the above official policies through widespread and well-settled custom and practice knowing that the policies were unconstitutional. And Kerrville ISD adopted the above official policies knowing they perpetuated continued teacher-student sexual abuse of both reporting victims and future student victims. Those consequences are well documented by organizations like the Texas Association of School Boards which Kerrville ISD looks to for policymaking guidance and information. Appropriate school district practices for responding to teacher-student sexual harassment and abuse have also been widely discussed and explained to the Kerrville ISD Board of Trustees as well as its District Officials repeatedly over the last ten to fifteen years through organizations like TASB and the Texas Association of School Administrators.

117.    The actions of these Kerrville ISD employees were known to the Kerrville ISD Board of Trustees. Jane Doe's outcry in 2017 finally caused Kerrville ISD administrators to report Colonel Edwards to authorities (state, local, and regulatory). Within days another instance of teacher-student sexual abuse report had to be made. Both reports resulted in police investigations and resulted in the District releasing a public statement.

118.    Based on information and belief, Assistant Superintendent Wade Ivy and Superintendent Foust reported their actions and the actions of Tivy's administration to the Board of Trustees as the school year continued. Superintendent/ Title IX Coordinator

Foust was still in his first year with the District and being closely evaluated on a variety of performance measures, including student safety, teacher recruiting and retention as well as compliance with state and federal laws.

119.     When Jane Doe was sexually abused by a second Kerrville ISD teacher less than three months after her outcry, Assistant Superintendent Ivy and Principal Balsar repeated the same pattern of conduct that they demonstrated in response to the two prior incidents of sexual abuse. That teacher also elected to resign in lieu of termination because Assistant Superintendent offered him that choice. Such an offer would have required notice to the Board.

120.     No matter what Kerrville ISD's policies said on paper, Kerrville ISD's actual official policies were those described above. Those policies were definitely a moving force in bringing about the repeated violations of Jane Doe's right to bodily integrity as well as the violation to bodily integrity her male classmate experienced when abused by the female teacher referenced above. One teacher abusing a child is too much. Three teachers abusing children in a single school within a two year period is evidence of both Kerrville ISD's official policy and the moving force that policy had in violating student constitutional rights.

121.     Kerrville ISD also violated Jane Doe's right to equal protection under § 1983 through its failure to supervise and train all of its employees. Kerrville ISD had a broad obligation to supervise all of its employees and can be held liable under § 1983 for

supervising (or failing to supervise) its employees in a manner that manifests callous disregard or deliberate indifference to the Constitutional rights of its students.

122.    Likewise, Kerrville ISD had broad obligation to supervise all of its employees and can be held liable under § 1983 for supervisory failures and failures to train that result in abuse if those failures manifest callous disregard or deliberate indifference to the Constitutional rights of a schoolchild.

123.    Here, there were three incidents of teacher-student sexual abuse at Tivy High School within less than two years. The same Principal, Vice Principal, and Assistant Superintendent were involved in responding (and choosing not to respond) to each incident with the same patterns and practices. Based on the proximity in time, the level of authority these actors held within the District, and the obvious pattern of established, it is reasonable to infer Ivy, Balsar, and Cook did what Kerrville ISD trained them to do.

124.    At the very least, it is reasonable to infer Kerrville's supervisory policies and practices from that behavior.

125.    Their actions show Kerrville ISD's supervisory failures and Kerrville ISD's widespread practice and well-settled custom to train its administrators and teachers to respond to reports of sexual abuse, sexual harassment, and educator sexual misconduct by the following, individually and in combination:

    a.  Ignoring such reports,

    b.  Discouraging reporting,

    c.  Selectively gathering evidence and documenting reports to minimize

potential future liability,

d. Minimizing or recasting the information reported in a non-discriminatory light,

e. Delaying investigations,

f. Delaying or avoiding complying with mandatory reporting laws,

g. Retaliating against student victims of sexual abuse and harassment,

h. Exposing student victims to potential future abuse by identifying them to teachers,

i. Instructing employees that the student victim was to blame or complicit in his/her own abuse,

j. Encouraging student victims to leave school or change activities without reporting and/or following reporting,

k. Taking actions to stop an accused employee from confessing in front of law enforcement,

l. Denying or delaying student victims/their representatives access to student education records, including information about the District's handling of reports involving that student, and

m. Taking steps to bring about the removal of a student victim from their learning environment against their wishes.

126. In fact, as detailed above, Principal Balsar told Tivy's teachers who Jane Doe was, what she reported, and that Jane Doe was complicit in her own abuse <u>at a teacher sexual abuse and harassment training meeting</u>. She did this in front of Assistant Superintendent Wade Ivy.

127. Kerrville ISD created an environment where Tivy High School teachers could and repeatedly did sexually abuse their students while under the District's charge. Two

different Tivy High School teachers openly groomed and sexually abused Jane within a matter of months. Principal Balsar and Assistant Principal Wade Ivy pointed the second abuser directly to Jane. When he began abusing her, they reacted with their prior pattern.

128.     Kerrville ISD's supervisory failures <u>and</u> Kerrville ISD's widespread practice and well-settled custom to train its administrators and teachers to respond to reports of sexual abuse, sexual harassment, and educator sexual misconduct were the moving force that resulted in repeated violations of Jane Doe's right to bodily integrity.

129.     As described above, Kerrville ISD's official policies and procedures, its training, and its supervision failures were adopted and carried out with manifest callus disregard and deliberate indifference for Jane Doe's constitutional rights. The constitutional violations she experienced as a result proximately caused the damages requested below.

## *<u>DAMAGES</u>*

130.     Based on the reasons stated in this Complaint, Jane Doe asks this Court to grant her the following relief:

     a.  Injunctive relief in the form of a mandatory injunction requiring Kerrville ISD to property train, instruct, and supervise its personnel regarding allegations of sexual abuse at any of its schools.

     b.  Past and future compensatory damages in an amount to be proved at trial and including, but not limited to, compensation for past and future physical harm, emotional distress, pain and suffering, lost earning capacity, and

impairment.

c. Attorney's fees under any law that provides for the recovery of attorney fees, including 42 U.S.C. § 1988.

d. Prejudgment interest, post-judgment interest, and costs of court as allowed by law.

e. Any further relief to which she may be justly entitled.

## *ATTORNEY'S FEES*

131.    Kerrville ISD's conduct, as described in this Complaint, and the resulting damage to Jane Doe necessitated Jane retaining the undersigned counsel to represent her in investigating and prosecuting her claims. Jane is, therefore, entitled to recover an additional sum from the District to compensate her for a reasonable fee for such attorneys' services in the investigation, preparation, and prosecution of this action as well as a reasonable fee for any and all appeals to other courts.

132.    In this regard, Jane Doe claims entitlement to attorneys' fees and costs under the fee-shifting provisions of 42 U.S.C. § 1988.

## *REQUEST FOR JURY TRIAL*

Jane Doe asks for a jury trial on each of her claims against Kerrville Independent School District.

Respectfully Submitted,

**THE CARLSON LAW FIRM, P·C·**
11606 North Interstate Highway 35
Austin, Texas 78753
Phone: (512) 346-5688
Fax:    (512) 719-4362

by:    */s/ L. Todd Kelly*
L. TODD KELLY
Texas Bar No. 2403509
tkellyefile@carlsonattorneys.com

**THE CARLSON LAW FIRM, P·C·**
301 Junction Highway, Suite 100
Kerrville, TX 78028
Phone: (830) 257-7575
Fax:    (830) 257-7580

AMOS L. BARTON
Texas Bar No. 24031847
Abarton@carlsonattorneys.com

*Application for Admission to
the Western District Forthcoming*

**HEATHER LONG LAW PC**
4310 North Central Expressway
Dallas, Texas 75206
Phone: (214) 699-5994

HEATHER LYNN LONG
Texas Bar No. 24055865
heather@heatherlonglaw.com

*Application for Admission to
the Western District Forthcoming*

**ATTORNEYS FOR JANE DOE**