**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TEXAS**
**SAN ANTONIO DIVISION**

| | | |
|---|---|---|
| JANE DOE, | § | |
| *Plaintiff* | § | |
| | § | |
| -vs- | § | SA-21-CV-00369-XR |
| | § | |
| KERRVILLE INDEPENDENT SCHOOL | § | |
| DISTRICT, | § | |
| *Defendant* | § | |

**ORDER**

On this day, the Court considered the above-captioned case. Before the Court is Defendant Kerrville Independent School District's ("KISD") motion to exclude the expert testimony of Dr. Charol Shakeshaft (ECF No. 50) and Plaintiff's response (ECF No. 58), as well as Plaintiff Jane Doe's motion to partially exclude the expert testimony of Dr. David P. Thompson (ECF No. 46) and Defendant's response (ECF No. 48). After careful consideration, the Court issues the following order.

**DISCUSSION**

**I.       Legal Standard**

Rule 702 of the Federal Rules of Evidence allows a witness "who is qualified as an expert by knowledge, skill, experience, training, or education" to testify so long as:

a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;

b) the testimony is based on sufficient facts or data;

c) the testimony is the product of reliable principles and methods; and

d) the expert has reliably applied the principles and methods to the facts of the case.

Fed. R. Evid. 702.

The Supreme Court's decision in *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579 (1993) provides the analytical framework for determining the admissibility of expert testimony. *Daubert* requires the district courts to act as "gatekeepers" to ensure expert testimony meets Rule 702's standards. *Id*. at 589. First, a district court "must be assured that the proffered witness is qualified to testify by virtue of his 'knowledge, skill, experience, training, or education.'" *United States v. Cooks*, 589 F.3d 173, 179 (5th Cir. 2009) (citing FED. R. EVID. 702). However, "Rule 702 does not mandate that an expert be highly qualified in order to testify about a given issue," *Huss v. Gayden*, 571 F.3d 442, 452 (5th Cir. 2009), and the "overarching concern is whether or not it is relevant and reliable," *Smith v. Goodyear Tire & Rubber Co.,* 495 F.3d 224, 227 (5th Cir. 2007). Thus, once the court determines an expert is qualified, it must ensure "that an expert's testimony both rests on a reliable foundation and is relevant to the task at hand." *Daubert*, 509 U.S. at 597.

With respect to the proper scope of expert testimony, testimony in the form of an opinion or inference otherwise admissible is not objectionable because it embraces an ultimate issue to be decided by the trier of fact. FED. R. EVID. 704(a)("An opinion is not objectionable just because it embraces an ultimate issue."). However, an expert cannot offer conclusions of law, *Snap–Drape, Inc. v. Com'r* 98 F.3d 194, 198 (5th Cir. 1996), nor go beyond the scope of his or her expertise. *First United Fin. Corp. v. U.S. Fid. & Guar. Co.,* 96 F.3d 135, 136 (5th Cir. 1996) (noting that expert testimony was properly rejected by the court because it went beyond expert's expertise).

II.     **Dr. Charol Shakeshaft**

Defendant seeks to exclude the testimony of Dr. Charol Shakeshaft (ECF No. 50), Plaintiff's expert witness.

A. Qualifications

First, Defendant argues that "Dr. Shakeshaft is unqualified to testify about 'legal standards or the reasonableness of school officials' actions under Title IX or Section 1983."[1] ECF No. 50 at 5. This argument is unpersuasive.

According to Dr. Shakeshaft's curriculum vitae, she received her Master of Science and Doctorate in Educational Administration from Texas A&M.[2] ECF No. 50-2 at 9. Dr. Shakeshaft has taught university-level education courses for over forty years. She spent almost thirty years teaching in the Department of Foundations, Leadership, and Policy Studies at Hofstra University's School of Education and is currently a professor at Virginia Commonwealth University in their Department of Educational Leadership. *Id*. at 9.

Dr. Shakeshaft has also published extensively on issues related to this case, such as the sexual harassment of students. Her recent publications include articles titled "School Employee Sexual Abuse Misconduct: Red Flag Grooming Behaviors by Perpetrators," "Sexual Abuse and Exploitation of PreK-12 Students by School Personnel," "K-12 School Employee Perpetrated Student Sexual Abuse, Misconduct, and Exploitation," and "A Standard of Care for the Prevention of Educator Sexual Misconduct." *Id*. at 10. Plaintiff's response also notes that Dr. Shakeshaft has

---

[1] In particular, Defendant maintains Dr. Shakeshaft is unqualified because her resume "does not indicate any experience" in school administration. ECF No. 50 at 5.
[2] The Court notes that Dr. Shakeshaft received her Master of Science and Doctorate from the same university as Defendant's expert, Dr. Thompson.

"authored a report on educator sexual misconduct that was published by the United States Department of Education." ECF No. 58 at 3.[3]

Thus, based on her education, professional history, and scholastic publications, the Court finds that Dr. Shakeshaft is a qualified expert. *See* Fed. R. Evid. 704. Based on her "knowledge, skill, experience, training, [and] education," she possesses the relevant "specialized knowledge to assist jurors in deciding the particular issues" of this case, namely whether the KISD complied with the relevant industry standards. *Id*.

B. Methodology

Defendant also opposes Dr. Shakeshaft's report on the basis that it "does not outline the methodology [] used to form her opinions," and states that any opinions expressed therein were "not based upon sufficient facts or data, or a sufficient understanding of the legal theories." *Id*. at 5–6. In particular, Defendant argues that Dr. Shakeshaft's conclusion that "KISD's responses to critical events and red flags was inadequate for preventing Jane Doe's harassment and abuses or for protecting Jane Doe from harassment and abuse," was based off a "plethora of guidelines and professional standards which are irrelevant." ECF Nos. 50-2 at 16; 50 at 6 (arguing the "professional standards of care or 'industry standards' are not synonymous with Title IX and Section 1983 legal standards.").

First, the Court notes that Dr. Shakeshaft's full report was not submitted with Defendant's motion (ECF No. 50) nor Plaintiff's response (ECF No. 58). Defendant provided a mere seven pages of what appears to be a 109-page report. *Compare* ECF No. 50-2 at 9 (reflecting page number "1") *with id*. at 16 (noting page number "110"). To the extent Defendant argues Dr. Shakeshaft employed an incorrect legal standard in concluding "KISD's responses to critical events and red

---

[3] Relatedly, Plaintiff cites Dr. Thompson's deposition, during which he stated: "Dr. Charol Shakeshaft is the recognized leader in the field of educator sexual misconduct." ECF Nos. 46-1; 58 at 5.

flags was inadequate," ECF No. 50 at 7, Defendant failed to provide the Court with this portion of the report. Without this information, the Court cannot evaluate whether Dr. Shakeshaft applied her methodology reliably in this instance.

However, based on the information before the Court, the Court cannot find that Dr. Shakeshaft generally employed an unreliable methodology. Section 2.0 of Dr. Shakeshaft's report lists the materials she considered in forming her opinion. ECF No. 50-2 at 13. Dr. Shakeshaft reviewed the applicable "state requirements," such as "state policies, regulations or procedures on mandated reporting, educator sexual misconduct, state Title IX laws, state policies on educator ethics, codes of conduct and training;" any "organization policy manuals, with reference to sexual harassment and/or misconduct;" and reports of sexual misconduct and investigations of those allegations. *Id*. After reviewing these documents, any additional "applicable regulations and policies," and "professional standards for prevention of trusted other sexual misconduct," Dr. Shakeshaft applied her "education, experience, research, and knowledge of school employee/trusted other sexual misconduct" to reach her conclusions. *Id*.

The Court concludes that Dr. Shakeshaft's testimony is "supported by appropriate validation" and "establishes a standard of evidentiary reliability." *See Daubert*, 509 U.S. at 590.

C.  Miscellaneous Objections

Finally, Defendant argues Dr. Shakeshaft's testimony is unnecessary because this "case does not involve any issue in the liability phase requiring the kind of 'scientific, technical, or specialized knowledge' contemplated by Rule 702," and that her testimony includes inappropriate legal conclusions on ultimate issues. ECF No. 50 at 3–4. The Court agrees with Plaintiff that Dr. Shakeshaft can help the jurors understand the "practical applications of Title IX's anti-discrimination requirements in the school district setting," and how Title IX regulations "provide

for students in the event of sexual assault [or] harassment." ECF No. 58 at 5–6. Any objections regarding Dr. Shakeshaft's legal conclusions are best saved for a motion in limine or trial. The Court nevertheless advises the parties that it will not allow any expert to opine on legal conclusions.

### III.    Dr. David P. Thompson

Dr. David P. Thompson is an "expert in education administration" and was hired by Defendant to testify as a liability expert. According to his curriculum vitae, Dr. Thompson has his Master of Science and Doctorate in Educational Administration from Texas A&M University. ECF No. 46-1 at 51. He has served as a Professor, Interim Chair, and Chair of University of Texas San Antonio's Department of Educational Leadership & Policy Studies. *Id*. at 52. Dr. Thompson's recent publications include articles entitled "Stopping Educator Sexual Misconduct Before it Starts," "Educator Sexual Misconduct: A Review of Definitions in the United States," and "The Changing Landscape of Texas Educator Professional Conduct." *Id*. at 53.

Plaintiff does not challenge Dr. Thompson's qualifications or methodologies but seeks to exclude Dr. Thompson's testimony to the extent that it goes beyond his professional opinion and offers impermissible legal conclusions. *See generally* ECF No. 46. As such, Plaintiff asks the Court to prevent Dr. Thompson from "offering opinions and testimony about what the law says, how it should be interpreted, and how it should be applied." *Id*. at 1.

Plaintiff objects to three portions of Dr. Thompson's expert report, in addition to his deposition testimony. *See id*. First, Plaintiff objects to the "purpose and summary" section of Dr. Thompson's report, ECF No. 46 at 2, which states:

> As articulated in my the engagement agreement, this report may also opine on: (a) whether the district violated Jane Doe's rights guaranteed by the United States Constitution and/or Title IX; (b) whether the district violated Jane Doe's rights by failing to train school district employees in the handling of [complaints of] sexual

harassment or abuse; (c) whether the district violated Jane Doe's rights by adopting inadequate or ineffective procedures for reporting sexual harassment, and (d) on whether the district retaliated against Jane Doe or caused Jane Doe to be subjected to retaliation in prohibition of Title IX.

ECF No. 46-1 at 4. Based on this summary, Plaintiff categorizes the report as a "blatant attempt to offer legal conclusions and supplant this Court as the sole authority on the law." *Id*.

Second, Plaintiff objects to the sources Dr. Thompson referenced when responding to Dr. Charol Shakeshaft's assertion that "KISD's of Jane Doe's harassment and abuses was insufficient and insufficiently acted upon and that contributed to Col. Edwards' and Aaron Chatagnier's patterns of predation." ECF Nos. 46 at 3–4; 46-1 at 29; 50-2 at 15. In response, Dr. Thompson first outlines the laws, policies, and other documents that he believes establish the standard of care on this issue. In doing so, Dr. Thompson referenced:

- Tex. Family Code. § 261.101;
- KISD Board Policy FFG;
- The KISD Student Handbooks for the 2017-2018 school years;
- "Conduct Prohibited by Either Title IX or the Fourteenth Amendment (Including Sexual Harassment and Sexual Abuse)," which references "KISD Board Policy FFH (Local)";
- "Employee Conduct Requiring 'Reports to State Board for Educator Certification,'" which references "KISD Board Policy (Legal);" and
- "Guidance from Court Cases Seeking Title IX Damages for Either Teacher-to-Student or Student Sexual Harassment," which cites *Gebser v. Lago Vista Indep. Sch. Dist*., 524 U.S. 274 (1998) and *Davis Next Friend LaShonda D. v. Monroe Cnty. Bd. of Educ.*, 526 U.S. 629 (1999)).[4],[5]

---

[4] Dr. Thompson summarized *Gebser*, *v. Lago Vista Indep. Sch. Dist*., 524 U.S. 274 (1998) as follows: "In the leading teacher-to-student Title IX sexual harassment case, the United States Supreme Court held that Title IX damages are not available to a student plaintiff in a teacher-to-student sexual harassment case 'unless an official of the school district who at a minimum has authority to institute corrective measures on the district's behalf has actual notice of, and is deliberately indifferent, the teacher's misconduct.' Further, the court defined deliberate indifference as 'an official decision by the recipient not to remedy the violation.'" ECF No. 46-1 at 32.

[5] Dr. Thompson describes *Davis Next Friend LaShonda D. v. Monroe Cnty. Bd. of Educ.*, 526 U.S. 629 (1999) as follows: "In the leading student-to-student Title IX sexual harassment, the United States Supreme Court also applied an actual notice-deliberate indifference standard. Specially, the high court held 'that funding recipients are properly held liable in damages only where they are deliberately indifferent to sexual harassment, of which they have actual knowledge, that is so severe, pervasive, and objectively offensive that it can be said to deprive the victims of access to the educational opportunities or benefits provided by the school.' In this case, the court further observed that school 'must merely respond to know peer harassment in a manner that is not clearly unreasonable,' thus expanding on its elaboration of deliberate indifference from *Gebser*." *Id*.

ECF No. 46-1 at 29–32.

Plaintiff objects to Dr. Thompson's use of the (1) Tex. Family Code. § 261.101; (2) "Conduct Prohibited by Either Title IX or the Fourteenth Amendment (Including Sexual Harassment and Sexual Abuse);" (4) "Employee Conduct Requiring 'Reports to State Board for Educator Certification;'" and "Guidance from Court Cases Seeking Title IX Damages for Either Teacher-to-Student or Student Sexual Harassment." ECF No. 46 at 3–4.

Third, and relatedly, Plaintiff argues that Dr. Thompson provided a legal conclusion when he applied the "administrative and case law standards" to the facts of this case. *Id*. at 4. After identifying the standard of care, Dr. Thompson's report summarizes several factual scenarios at issue in the case. Among these is the "glue incident," in which Plaintiff spilled glue on her pants and a male student "intimated in vulgar terms that Jane performed oral sex on Col. Edwards." ECF Nos. 1 at 6; 46-1 at 32. After summarizing the "glue incident," Dr. Thompson's report states:

> Applying both the administrative and case law standards to this case, it is my opinion that Mr. Cook responded appropriately to Jane Doe's report. Once he received knowledge of that incident that he reasonably believed constituted student-to-student sexual harassment, he acted contemporaneously and promptly to discipline the male student, and there is no evidence that the student repeated this misconduct. In other words, he made an official decision to remedy the harassment, and in so doing, prevented future recurrence.

ECF No. 46-1 at 33. Plaintiff objects to the following portion of Dr. Thompson's statement: "Applying both the administrative and case law standard to this case, it is my opinion that Mr. Cook responded appropriately to Jane Doe's report." ECF No. 46 at 4.

Finally, Plaintiff seeks to exclude statements Dr. Thompson made during his deposition regarding "agency guidance as statements of what Texas' reporting law requires." *Id*. During his deposition, Dr. Thompson was asked about document "KISD 3001," which he identified as the:

> Report that is required by [the State Board for Educator Certification] that was instituted in Senate Bill 7 that became effective on September 1, 2017, that requires

[the] superintendent to notify the State Board for Educator Certification[] or the TEA, Texas Education Agency, which SBEC is a part of, when an educator resigns or is terminated and there is evidence that that person engaged in -- just for -- to make it very simple, an improper educator student relationship.

ECF No. 46-1 at 91.

Ultimately, Plaintiff argues that Dr. Thompson testifies about the law, and in particular, "what Title IX means, how courts have interpreted the statute, and whether Kerrville ISD violated the law" as well as Dr. Thompson's "take on what the law is, how it should be interpreted, and how it applies here." ECF No. 46 at 4. Plaintiff maintains that these are inadmissible legal conclusions. *Id*. at 7.[6,7]

Accordingly, Plaintiff seeks to exclude:

(1) All "references to what statutes and administrative regulations mean or apply except when: quoting a document generate by Kerrville ISD;"
(2) The sections of Dr. Thompson's report titled "Guidance from Court Cases Seeking Title IX Damages for Either Teacher-to-Student or Student Sexual Harassment," "Conduct Prohibited by Either Title IX or the Fourteenth Amendment (Including Sexual Harassment and Sexual Abuse)," and "Employee Conduct Requiring 'Reports to State Board for Educator Certification'" because it "characterizes a Kerrville ISD policy as well as agency guidance as statements of what Texas' reporting law requires;
(3) The section of Dr. Thompson's report stating: "Applying both the administrative and case law standard to this case, it is my opinion that Mr. Cook responded appropriately to Jane Doe's report;" and
(4) Statements made during Dr. Thompson's deposition regarding the applicable law and what is or is not allowed by law.

ECF No. 46 at 3–4.

---

[6] Plaintiff also cites to several other district courts who have "prohibited Dr. Thompson from testifying about legal conclusions related to Title IX, its interpretation, and its application." *Id*. at 6. (citing *Tompkins v. Amarillo Coll.*, No. 2:19-CV-27-Z-BR, 2021 WL 4796739, at *8 (N.D. Tex. Mar. 22, 2021) (excluding Dr. Thompson's statement "that Ms. O'Donnell's conduct, while inappropriate, did not constitute sexual harassment, much less sexual harassment that was severe, persistent, or pervasive to meet a hostile environment threshold." as an inadmissible legal conclusion)).

[7] Plaintiff also cites to *Doe v. Wharton Indep. Sch. Dist.*, No. 2:16-CV-48, 2017 WL 932935, at *1 (S.D. Tex. Mar. 9, 2017) (finding that Dr. Thompson "invade[d] the province of the jury in opining regarding the ultimate fact questions of whether WISD had actual knowledge of the teacher's alleged violations of Title IX and whether WISD acted with deliberate indifference with respect to what it knew" but holding that Dr. Thompson could testify as to the "school standards of care for implementing Title IX and anti-discrimination policies"). *Id*. at 6.

9

Defendant acknowledges that Dr. Thompson cannot testify as to legal conclusions but maintains that Dr. Thompson's testimony is helpful to establish the standard of care in this case and evaluate whether a school has met the standards of care under Title IX. ECF No. 48 at 1–2 Defendant urges the Court to "resolve doubts regarding the usefulness of an expert's testimony in favor of admissibility." *Id*. at 4 (citing *Portz v. St. Cloud State University*, 297 F. Supp.3d 929 (D. Minn. 2018)).

After reviewing Dr. Thompson's qualifications, his expert report, and the relevant case law, the Court grants Plaintiff's motion in part and denies the motion in part.

Plaintiff's request to exclude "all references to what statutes and administrative regulations mean or apply except when: quoting a document generate by Kerrville ISD," is denied. Experts routinely opine on the standard of care; references to statutes and administrative regulations is one method of establishing a standard of care. For the same reason, the section entitled "Guidance from Court Cases Seeking Title IX Damages for Either Teacher-to-Student or Student Sexual Harassment," is also denied.

However, Plaintiff's request to exclude Dr. Thompson's opinions applying *Gerber* to the "glue incident" is granted. *See* ECF No. 46-1 at 33. Application of the law to fact falls within the province of the jury. Moreover, Dr. Thompson's statement that Vice Principal Cook made an "official decision to remedy the harassment," is akin to a legal conclusion that Defendant complied with the law, as outlined in *Gebser*, 524 U.S. at 290 ("We think, moreover, that the response must amount to deliberate indifference to discrimination . . . The premise, in other words, is an official decision by the recipient not to remedy the violation.").

Plaintiff's request to exclude reference to KISD Board Policy DHD (Legal) as "Employee Conduct Requiring 'Reports to State Board for Educator Certification'" is denied. Although Dr.

Thompson states that the policy was "drawn from state statute," ECF No. 46-1 at 31, this statement is not a legal conclusion.

Plaintiff's request to exclude the section entitled "Conduct Prohibited by Either Title IX or the Fourteenth Amendment (Including Sexual Harassment and Sexual Abuse)," is denied. Again, experts may opine on the relevant standard of care by referencing underlying law. However, insofar as the title inaccurately describes the contents, i.e., the KISD Board Policy and Handbook, this argument is best left for a motion in limine. Likewise, objections to Dr. Thompson's deposition testimony regarding document KISD 3001, Senate Bill 7, and the State Board for Educator Certification are best left for a motion in limine.

## CONCLUSION

Defendant's motion to exclude Dr. Charol Shakeshaft (ECF No. 50) is **DENIED**. Plaintiff's motion to partially exclude the testimony of Dr. David P. Thompson is **GRANTED IN PART** and **DENIED IN PART**.

It is so **ORDERED**.

**SIGNED** this 16th day of August, 2023.

Xavier Rodriguez
United States District Judge