**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TEXAS**
**SAN ANTONIO DIVISION**

| | | | |
|---|---|---|---|
| JANE DOE, | § | | |
| *Plaintiff* | § | | |
| | § | | SA-21-CV-00369-XR |
| -vs- | § | | |
| | § | | |
| KERRVILLE INDEPENDENT SCHOOL | § | | |
| DISTRICT, | § | | |
| *Defendant* | § | | |

## <u>ORDER</u>

On this day, the Court considered Defendant Kerrville Independent School District's motion for summary judgment (ECF No. 51), Plaintiff Jane Doe's ("Doe") response (ECF No. 59), and Defendant's reply (ECF No. 61). After careful consideration, Defendant's motion for summary judgment (ECF No. 51) is **GRANTED IN PART** and **DENIED IN PART**.

## BACKGROUND

Doe was a high school student in the Kerrville Independent School District at Tivy High School ("Tivy"). ECF No. 51-1 at 3. Doe contends that, during her sophomore and junior years, she suffered sexual abuse by two teachers—Air Force JROTC instructor Lieutenant Colonel (Ret.) Christopher Edwards ("Edwards") and Aaron Chatagnier ("Chatagnier")—as well as verbal harassment by school faculty from December 2016 through 2018. ECF No. 1 ¶¶ 54–91; ECF No. 59-1 at 1. And Doe alleges that she experienced student-on-student sexual harassment starting in spring 2017 until her graduation in 2018. ECF No. 1 ¶¶ 92–94; ECF No. 59-1 at 1.

First, Doe alleges she experienced sexual harassment by Edwards from December 2016 until September 2017. ECF No. 51-1 at 3–6; ECF No. 59-1 at 1. Starting in December and January, Edwards allegedly made inappropriate communications towards Doe, telling her that "she was

more intelligent and relatable than the other students" and that "[Edwards] missed her and his vacation was boring." ECF No. 51-1 at 3–4. Later, his conduct toward Doe allegedly became increasingly alarming. ECF No. 59-3. Edwards began hugging Doe, and running his hand up Doe's thigh while they were alone in his office. ECF 51-1 at 4. Edwards then allegedly groped Doe on multiple occasions—rubbing her crotch, her breasts, and her bottom. *Id.* at 4–5. Further, in the spring of 2017, on the bus back from a field trip, Edwards allegedly sat next to Doe with a blanket covering them both and rubbed Doe's vagina over her clothes and gave her a foot massage. *Id.* at 5. According to Doe, Edwards would tell Doe that "he loved her." *Id.* at 6. Sometime during this abuse, Edwards expressed his desire to have sex with Doe and told Doe that he "[w]anted to [ejaculate] on her." ECF No. 59-3 at 1; ECF No. 51-1 at 7; ECF No. 59-1 at 16. At the beginning of Doe's junior year, Doe told Edwards to leave her alone. But this upset Edwards, and he began treating her poorly. ECF No. 59-1 at 32. On September 6, 2017, Doe ultimately reported this harassment to Chief Master Sergeant (Ret.) Fred Brunz ("Brunz").[1] The next day Brunz reported Doe's allegations to school administrators, who then notified Child Protective Services and the Kerrville Police Department on September 8, 2017. ECF No. 51-1 at 6; ECF No. 59-1 at 15–16; ECF No. 59-3 at 1. On September 18, 2017, Edwards resigned from his position. ECF No. 59-3 at 2.

Doe further alleges that beginning at least in May 2017, rumors spread around the school regarding Doe's relationship with Edwards, allegedly impacting the way both students and teachers interacted with her. ECF No. 51-1 at 7; ECF No. 59-1 at 4. For example, in May 2017, at least one JROTC student made an inappropriate comment about Doe and Edwards engaging in oral sex. ECF No. 51-1 at 7. According to Doe, "While waiting after school in the [JROTC area]

---

[1] The parties equivocate regarding the date on which Doe first informed Brunz of her sexual abuse at the hand of Edwards. *Compare* ECF No 51 at 5; ECF No. 59-1 at 15 *with* ECF No. 51-1 at 6; ECF No. 59-1 at 32.

I was using school glue and I got some on my knees. [My classmate] stated I was 'making pads for Colonel when I would go down on him' and that glue looked like 'the aftermath when Colonel was finished with me.'" ECF No. 59-3 at 16. Additionally, after Edwards's resignation, a teacher allegedly made a passing reference to Doe's relationship with Edwards and its effect on Doe's reputation in response to Doe and her classmates' inappropriate answer to a school assignment.[2] Allegedly, the teacher stated that "You know, if you don't want people" or "you're worried about your reputation, but if you don't want people to think that, maybe you shouldn't act that way." ECF No. 51 at 8; ECF No. 51-1 at 11–12; ECF No. 53 at 169. On other occasions, other teachers allegedly treated Doe differently from other students because of her reporting Edwards's sexual harassment. ECF No. 51-1 at 11–12. For example, one teacher purportedly refused to allow Doe to go to the restroom, stating "I'm not going to let you use the restroom because you're just going to go talk to your little male teacher friends." *Id.* at 11. On another occasion, Doe alleges that a teacher retaliated against her by enforcing the school dress code. *Id.*

Mere days after learning of Edwards's harassment of Doe, Defendant learned of another instance of teacher-on-student sexual harassment at Tivy, involving a different teacher and other students. ECF No. 59-1 at 5. On September 12, 2017, Principal Shelby Balser ("Principal Balser") and other school administrators became aware that Tivy's librarian, Sarah D'Spain ("D'Spain"), had sent partially nude photos to multiple students, and had met one student off campus where the two kissed and she allowed the student to feel her breasts. ECF No. 59-1 at 5; ECF No. 59-5. That same day, the Kerrville Police Department was made aware of the incident. ECF No. 59-5 at 5. D'Spain resigned from her position on September 16, 2017. *Id.* at 2.

---

[2] Doe and her classmates were directed to pick a career, write about it, and draw a picture. ECF No. 51-1 at 11–12. In response, Doe and her classmates elected to draw an exotic dancer. *Id.* As a result, Doe and the two other classmates who completed the assignment were given in-school suspension. *Id.*

After learning of these instances of sexual misconduct, Principal Balser gave presentations to students and teachers about maintaining proper teacher-student relationships. ECF No. 59-1 at 13; ECF No. 59-24. Among other things, Defendant had the Texas Education Agency provide additional training on Educator Ethics to teachers. ECF Nos. 59-23; ECF No. 59-8 at 41; ECF No. 59-31 at 23–62. Defendant also sent a letter to every parent and guardian in the school district informing parents of the reports of inappropriate teacher-student relationships, identifying the date on those reports were received, and communicating that it placed Edwards and D'Spain on administrative leave and was cooperating with law enforcement investigations into the matters. ECF No. 59-13. [3]

Yet, about two months after Edwards's resignation, Doe alleges she began experiencing sexual harassment at the hands of a different teacher, Chatagnier, her math teacher during her junior year. ECF No. 51-1 at 7–10. This alleged abuse started in November 2017 when "[Doe] began talking to Chatagnier for emotional support" following her harassment by Edwards. ECF No. 51-1 at 7–8; *see also* ECF No. 59-1 at 1. Doe would go to Chatagnier's room early or stay late after class. *Id.* But by February 7, 2018, Principal Balser had apparently become concerned by Chatagnier's relationship with Doe, writing a letter to Chatagnier detailing the need to maintain professional relationships between teachers and students and meeting with Chatagnier to communicate the concerns alongside Assistant Principal Chris Cook ("Assistant Principal Cook"). ECF No. 59-11 at 80; ECF No. 59-4 at 2. On February 13, 2018, Assistant Superintendent Wade Ivy ("Assistant Superintendent Ivy") met with Doe and her parents regarding her relationship with Chatagnier, expressing concerns. ECF No. ECF No. 53 at 115; ECF No. 59-4 at 2. According to Doe, Assistant Superintendent Ivy instructed Doe that "it would be best that [Doe and Chatagnier]

---

[3] For her part, Doe contends that these actions caused more harm than good, arguing that Defendant's actions following Edwards's resignation clearly identified Doe as a victim to teachers and classmates. ECF No. 59-1 at 2, 13.

didn't have [their] conversations on campus and that [they] do so off campus." ECF No. 53 at 115; *see also* ECF No. 59-1 at 22. Later that month, on February 20, 2018, Principal Balser, Assistant Principal Cook, and Assistant Superintendent Ivy met again with Chatagnier to remind him that Doe should not be in his room at unscheduled times. ECF No. 59-4 at 2. On March 5, 2018, after school administrators became aware that Doe continued to go to Chatagnier's room at unscheduled times, school administrators issued a written directive to Chatagnier. *Id.* at 3.

Following the intervention by school administrators in February 2018, Doe and Chatagnier began meeting off campus at Schriener University a couple times a week. ECF No. 53 at 122. This is when Chatagnier's alleged actions towards Doe turned overtly sexual. ECF No. 51-1 at 8. At Schriener, Chatagnier allegedly began to kiss Doe and hug her. ECF No. 51-1 at 9. Eventually, Chatagnier allegedly began to perform oral sex on Doe at Schriener. ECF No. 51-1. This conduct continued through April 2018. ECF No. 53 at 122–23.

While most of this conduct occurred away from Tivy, in March 2018, Dr. Kendall Young ("Dr. Young") witnessed Doe kneeling on the ground behind Chatagnier's desk during class. ECF No. 60-5; ECF No. 59-17 at 22–23. Dr. Young reported this incident to Principal Balser expressing concern that what she witnessed made her uncomfortable. ECF No. 60-5. Doe also alleges that at least one time Chatagnier had kissed her at Tivy, and had attempted to perform oral sex on her. ECF No. 53 at 153.

Chatagnier's alleged abuse of Doe culminated in April 2018, with Chatagnier taking Doe to go to a Volkswagen convention in Fredericksburg. ECF No. 51-1 at 9.[4] On this trip, Chatagnier pulled off the road into a remote location and had sex with Doe. ECF No. 51-1 at 9. On the way home from the convention, Chatagnier stopped at a cabinet making shop and again had sex with

---

[4] While Defendant alleges the relevant date was April 9, 2018, other evidence submitted to the Court suggests these events occurred later in April 2018. *Compare* ECF No. 51-1 at 9 *with* ECF No. 59-11 at 78.

Doe in the shop. ECF No. 51-1 at 9.[5] The week after, Chatagnier and Doe wore matching shirts to school. ECF No. 59-1 at 7. That same day, another student informed Principal Balser they had observed Doe say that she and Chatagnier had "hooked up." ECF No. 59-1 at 7; ECF No. 59-11 at 60.

On April 13, 2018, school administrators became aware that Doe was not in her assigned class, and that Doe was instead near Chatagnier's classroom at the time. ECF No. 59-4 at 3. While investigating the incident, Chatagnier admitted to Principal Balser, Assistant Principal Cook, and Assistant Superintendent Ivy that Doe had been in his room during that time. *Id.* Further, Chatagnier informed them that several times Doe had threatened suicide, which he failed to report to the appropriate authorities but he had communicated to Doe's mother. *Id.* Assistant Superintendent Ivy then informed Chatagnier they would recommend his termination for failing to follow their verbal and written directives to maintain a professional relationship with Doe, for being untruthful, and for failing to appropriately report a student's threat of suicide. *Id.* As a result, Chatagnier elected to resign his position the same day. *Id.*; ECF No. 51-1 at 7–10; ECF No. 59-1 at 1, 21.

According to Defendant, it was unaware of Chatagnier's sexual abuse of Doe until 2020, years after Chatagnier's resignation, when it learned that the Kerrville Police Department was investigating Doe's sexual abuse at the hands of Chatagnier. ECF No. 59-36; ECF No. 59-1 at 21; ECF No. 69 at 5; ECF No. 59-4 at 2–3. Doe, on the other hand, points to Defendant's repeated warnings to Chatagnier about his relationship with Doe until his resignation as evidence that KISD was aware of the harassment as it was occurring. ECF No. 59-1 at 21–22; ECF No. 59-4; ECF No. 59-1 at 21–23. Notably, after Chatagnier's resignation, Defendant sent a letter to the State Board

---

[5] The following week, Chatagnier returned with Doe to this shop and again allegedly had sex with her there. ECF No. 51-1 at 10.

for Educator Certification, Director of Educator Investigation regarding Chatagnier's resignation in which it stated, "there is no claim of, or evidence that a sexual or romantic relationship exists." ECF No. 59-4.

After Chatagnier's resignation, Doe transferred from Tivy High School to Hill Country High School to obtain her diploma. ECF No. 59 at 21; ECF No. 59-1 at 26. According to Doe, Defendant's "deliberate indifference to and participation in the sexual harassment campaign finally broke [Doe]," forcing her to transfer. ECF No. 59-1 at 26. In contrast, Defendant contends that Doe was the one to request the transfer to Hill Country High School because of Chatagnier's resignation. ECF No. 69 at 9.

On April 9, 2021, Doe brought suit alleging: (1) hostile environment resulting from teacher-on-student sexual harassment under Title IX; (2) hostile environment resulting from student-on-student sexual harassment under Title IX; (3) retaliation under Title IX; and (4) violation of Doe's Fourteenth Amendment substantive due process rights under 42 U.S.C. § 1983. ECF No. 1.

On June 9, 2023, Defendant moved for summary judgment, arguing that it is entitled to summary judgment on all of Doe's claims.

## LEGAL STANDARD

The Court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. FED. R. CIV. P. 56. To establish that there is no genuine issue as to any material fact, the movant must either submit evidence that negates the existence of some material element of the non-moving party's claim or defense, or, if the crucial issue is one for which the nonmoving party will bear the burden of proof at trial, merely point out that the evidence in the record is insufficient to support

an essential element of the nonmovant's claim or defense. *Little v. Liquid Air Corp.*, 952 F.2d 841, 847 (5th Cir. 1992), *on reh'g en* banc, 37 F.3d 1069 (5th Cir. 1994) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)).

Once the movant carries its initial burden, the burden shifts to the nonmovant to show that summary judgment is inappropriate. *See Fields v. City of S. Hous.*, 922 F.2d 1183, 1187 (5th Cir. 1991). Any "[u]nsubstantiated assertions, improbable inferences, and unsupported speculation are not sufficient to defeat a motion for summary judgment," *Brown v. City of Houston*, 337 F.3d 539, 541 (5th Cir. 2003), and neither will "only a scintilla of evidence" meet the nonmovant's burden. *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc). Rather, the nonmovant must "set forth specific facts showing the existence of a 'genuine' issue concerning every essential component of its case." *Morris v. Covan World Wide Moving, Inc.*, 144 F.3d 377, 380 (5th Cir. 1998). The Court will not assume "in the absence of any proof . . . that the nonmoving party could or would prove the necessary facts" and will grant summary judgment "in any case where critical evidence is so weak or tenuous on an essential fact that it could not support a judgment in favor of the nonmovant." *Little*, 37 F.3d at 1075.

For a court to conclude that there are no genuine issues of material fact, the court must be satisfied that no reasonable trier of fact could have found for the nonmovant, or, in other words, that the evidence favoring the nonmovant is insufficient to enable a reasonable jury to return a verdict for the nonmovant. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). In making this determination, the court should review all the evidence in the record, giving credence to the evidence favoring the nonmovant as well as the "evidence supporting the moving party that is uncontradicted and unimpeached, at least to the extent that evidence comes from disinterested witnesses." *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 151 (2000). The Court "may

not make credibility determinations or weigh the evidence" in ruling on a motion for summary judgment, *id.* at 150, and must review all facts in the light most favorable to the nonmoving party. *First Colony Life Ins. Co. v. Sanford*, 555 F.3d 177, 181 (5th Cir. 2009).

## DISCUSSION

## I.    Evidentiary Objections[6]

Before considering Defendant's motion for summary judgment, the Court must first address the evidentiary objections asserted by both parties.

### a.  *Doe's Objections*

Doe has lodged several objections to Defendant's summary judgment evidence. Specifically, Doe takes general issue with Assistant Superintendent Ivy's declaration (ECF No. 51-4), as well as to the hyperlinked website address for the current version of Defendant's board policy manual contained in paragraph seven of Assistant Superintendent Ivy's declaration and paragraphs nine, ten, and thirteen of Assistant Superintendent Ivy's declaration. In addition, Doe objects to Exhibits B-16 through B-32. Here, the Court will address Doe's general objection to Assistant Superintendent Ivy's declaration. However, because the Court's summary judgment analysis does not rely on the challenged paragraphs, hyperlinked website, or Exhibits B-16 through B-32, the Court will reserve ruling on those objections until trial.

Doe generally objects to Assistant Superintendent Ivy's declaration, submitted in support of Defendant's motion (ECF No. 51-4). Doe argues that Assistant Superintendent Ivy has not been properly offered as "an expert on the adequacy of training or policies in preventing educator sexual misconduct, sexual assault, sexual harassment, or discrimination on the basis of sex in any form,"

---

[6] In addition to making evidentiary objections, Doe repeatedly challenges the credibility of Defendant's witnesses. ECF No. 59 at 2–3. However, a court cannot weigh credibility of witnesses on a motion for summary judgment. *Guzman v. Allstate Assurance Co.*, 18 F.4th 157, 160 (5th Cir. 2021).

and that therefore Assistant Superintendent Ivy "cannot opine on ultimate issues of fact." ECF No. 59 at 4–5. Indeed, Assistant Superintendent Ivy has not been offered as an expert on these issues and can only offer testimony based on his personal knowledge. Nonetheless, Assistant Superintendent Ivy's declaration appears to be based on his personal knowledge as the Assistant Superintendent for Defendant; the declaration sets forth evidence regarding the amount and type of training given to Defendant's employees. Thus, the Court will not strike this declaration simply because it embraces an ultimate issue of fact. *See Fateh v. Rich*, 481 A.2d 464, 470 (D.C. 1984) ("[Non-expert] testimony is not inadmissible simply because it embraces an ultimate issue to be decided by the trier of fact."). Doe's objection appears to bear more on the weight of the evidence rather than its admissibility. Accordingly, the Court overrules Doe's objection.

### b. Defendant's Objections

Similarly, Defendant lodges many objections to Doe's summary judgment evidence. Specifically, Defendant objects to an undated photograph of Doe; a spreadsheet listing students reporting harassment on the basis of race, disability, or sex; a statement by Doe's mother in an email to Assistant Superintendent Ivy that Principal Balser considered Doe complicit in Edwards's harassment; screenshots of snapchats discussing the various instances of sexual harassment; unidentified handwritten notes; duplicative exhibits; and deposition planning notes. However, because the Court's summary judgment analysis does not rely on the challenged evidence, the Court will reserve ruling on those objections until trial.

## II.   Title IX Claims

Under Title IX, "[n]o person in the United States shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subject to discrimination under any program or activity receiving Federal financial assistance." 20 U.S.C. § 1681(a). Plaintiff alleges that she

was subjected to unlawful discrimination on the basis of sex, both by KISD teachers and faculty and by fellow students, and that Defendant violated Title IX by responding to her harassment with deliberate indifference. ECF No. 1 ¶ 55.

### a.  Teacher-on-Student Sexual Harassment

Plaintiff's claims for teacher-on-student harassment are based on three distinct categories of conduct: (1) sexual abuse by Edwards, (2) sexual abuse by Chatagnier, and (3) sexual harassment by teachers and administrators. The Court treats these as three distinct claims. *See* ECF No. 59 at 8–9.

To recover for teacher-on-student sexual harassment, a plaintiff must show that "(1) a school district employee with supervisory power over the offending teacher (2) had actual notice of the harassment and (3) responded with deliberate indifference." *King v. Conroe Indep. Sch. Dist.*, 289 F. App'x 1, 4 n.3 (5th Cir. 2007) (citing *Gebser v. Lago Vista Indep. Sch. Dist.*, 524 U.S. 274, 290 (1998)).

First, a school district must have actual notice of teacher-on-student sexual harassment. *See Gebser v. Lago Vista Indep. Sch. Dist.*, 524 U.S. 274, 292 (1998). Constructive notice is not enough. *Rosa H. v. San Elizario Indep. Sch. Dist.*, 106 F.3d 648, 656 (5th Cir. 1997). In the Fifth Circuit, actual notice means that "the school must have actual knowledge that harassment has occurred, is occurring, or that there is a 'substantial risk that sexual abuse would occur.'" *Roe v. Cypress-Fairbanks Indep. Sch. Dist.*, 53 F.4th 334, 341 (5th Cir. 2022) (quoting *M.E. v. Alvin Indep. Sch. Dist.*, 840 F. App'x 773, 775 (5th Cir. 2020)). "Accordingly, liability requires that 'the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference.'" *Roe v. Cypress-Fairbanks Indep. Sch. Dist.*, 53 F.4th 334, 341 (5th Cir. 2022) (quoting *Rosa H.*, 106 F.3d at 659). "Whether an

official had actual notice is a question of fact. Thus, [this] question of . . . actual notice may be resolved as a matter of law where . . . the facts are not in dispute." *Doe v. Dallas Indep. Sch. Dist.*, 220 F.3d 380, 384–85 (5th Cir. 2000) (citations omitted).

Second, to establish liability under Title IX for teacher-on-student sexual harassment, a plaintiff must show not only that a defendant had actual notice of the harassment, but that a person with actual notice "was an official with the power to remedy discrimination." *Doe v. Dallas Indep. Sch. Dist.*, 220 F.3d at 384. "[T]o be an 'appropriate person' under Title IX, the official must have authority to both 'repudiate th[e] conduct and eliminate the hostile environment.'"[7] *Doe v. Edgewood Indep. Sch. Dist.*, 964 F.3d 351, 360 (5th Cir. 2020) (second alteration in original) (quoting *Rosa H.*, 106 F.3d at 661). In general, this person's authority "must include the power to terminate or discipline." *Id.*

Third, a plaintiff must present evidence that the defendant acted with deliberate indifference to the harassment. Indeed, the "deliberate indifference standard is a high one." *Doe v. Dallas Indep. Sch. Dist.*, 220 F.3d at 384 (quoting *Doe v. Dallas Indep. Sch. Dist.*, 153 F.3d 211, 219 (5th Cir. 1998)). "Officials may avoid liability under a deliberate indifference standard by responding reasonably to a risk of harm, 'even if the harm ultimately was not averted.'" *Id.* (quoting *Farmer v. Brennan*, 511 U.S. 825, 844 (1994)). In discussing the deliberate indifference standard under § 1983, the Fifth Circuit noted that it could "foresee many good faith but ineffective responses that might satisfy a school official's obligation in these situations, e.g., warning the state actor, notifying the student's parents, or removing the student from the teacher's class." *Doe v. Taylor Indep. Sch. Dist.*, 15 F.3d 443, 457 (5th Cir. 1994). Lastly, a school district's failure to

---

[7] Although the harasser himself has, by definition, the power to eliminate the hostile environment—by simply refraining from the harassing behavior—the harasser's own awareness that his conduct constitutes harassment will not satisfy this element. *Salazar v. S. San Antonio Indep. Sch. Dist.*, 953 F.3d 273, 284–85 (5th Cir. 2017).

follow its own policy does not render that school district's actions clearly unreasonable and thus deliberately indifferent. *See Sanches v. Carrollton-Farmers Branch Indep. Sch. Dist.*, 647 F.3d 156, 169 (5th Cir. 2011) (quoting *Gebser v. Lago Vista Indep. Sch. Dist.*, 524 U.S. 274, 291–92 (1998)). "So long as a school district's response is not 'clearly unreasonable in light of the known circumstances,' we 'refrain from second-guessing the disciplinary decisions made by school administrators.'" *Menzia v. Austin Indep. Sch. Dist.*, 47 F.4th 354, 364 (5th Cir. 2022) (quoting *Davis v. Monroe Cnty. Bd. of Educ.*, 526 U.S. 629, 648 (1999)). "Whether an official's response to actual knowledge of discrimination amounted to deliberate indifference likewise may appropriately be determined on summary judgment." *Doe v. Dallas Indep. Sch. Dist.*, 220 F.3d at 387.

In its motion for summary judgment, Defendant argues that Plaintiff's Title IX claims for teacher-on-student sexual harassment fail as a matter of law because "(1) no KISD official with supervisory authority (2) had actual knowledge of the alleged sexual abuse at the time it occurred, and (3) KISD was not deliberately indifferent." ECF No. 51 at 3. In response, Plaintiff argues that (1) school administrators with the authority to take corrective action were aware of the concerning behavior,(2) school officials had actual knowledge of the sexual harassment by both Edwards and Chatagnier, (3) Defendant failed to shift the burden to Doe in its motion for summary judgment, and (4) a reasonable jury could find that Defendant acted with deliberate indifference on all three teacher-on-student sexual harassment claims. *See* ECF No. 59 at 9–17.

### i.  Abuse by Edwards

To begin, the parties do not dispute that Defendant had actual knowledge of Doe's abuse at the hands of Edwards on September 6, 2017, when Doe reported Edwards's conduct. ECF 51-1 at 4–6; ECF 59-1 at 33. Nor do the parties dispute that thereafter Defendant referred the matter to

law enforcement and placed Edwards on administrative leave. ECF 59-3 at 1, 5, 24. The parties

also agree that Doe had no further interactions with Edwards after making her report. *See* ECF No.

59-1 at 15–16 ("[Doe] walked away in tears after that and had no further contact with Edwards. .

. . She did not see the Colonel again after the confrontation that [Doe] and [Brunz] both identified

as taking place on September 6, 2017."); ECF 51-1 at 7 ("[Doe] says that she saw Edwards' car on

the morning of September 7, but never saw nor interacted with Edwards again."). As a result, the

evidence shows that Defendant's response to her allegations in September 2017 did not constitute

deliberate indifference. *See, e.g.*, *Menzia*, 47 F.4th at 364 ("A showing of deliberate indifference

is a tall hurdle because a school district cannot be liable unless it consciously avoids confronting

harassment, or responds with pretextual or knowingly ineffective interventions." (internal

quotations and citations omitted)).

Thus, to survive Defendant's motion for summary judgment, Doe must adduce evidence

that Defendant had actual notice of Doe's harassment before Doe's September 2017 report, and

that it responded with deliberate indifference.

### 1. Actual Notice

Defendant argues that the May 2017 comments by a JROTC student referring to oral sex

between Edwards and Doe did not place Defendant on notice of the sexual harassment during the

relevant period. ECF No. 51 at 5. According to Defendant, Doe immediately reported the

harassment, and the student was expelled from JROTC. ECF No. 51 at 5. Defendant also argues

that it is "undisputed that [Doe] never told anyone with KISD about her inappropriate relationship

with Edwards until September [6], 2017." *Id.*[8] Plaintiff, however, contends that a reasonable jury

could conclude, based on the JROTC student's May 2017 oral sex comments and other

---

[8] As noted above, the parties equivocate on the date on which Defendant had actual notice of Doe's abuse. *See supra* note 1.

circumstantial evidence, that school administrators and Brunz had actual notice of a substantial risk of serious harm to Doe. ECF No. 59 at 10–12.

Although it is undisputed that Doe informed no one at the school of Edwards's abuse until September 6, 2017, ECF No. 51-1 at 4–6; ECF No. 59-1 at 33, Doe argues that Defendant had actual notice based on the JROTC student's oral sex comment, uncomfortably long hugs between Doe and Edwards observed by Brunz, "[Doe]'s interaction with Edwards while she was sitting in a hallway with her legs up and spread," a significant number of hall passes issued from Edwards to Doe, and that Doe and Edwards "sat next to each other under a blanket on the bus home from an overnight trip." ECF No. 59 at 10–12.

Doe, however, must offer evidence to show either that Defendant had actual knowledge or that Defendant "actually knew that there was a substantial risk that sexual abuse would occur." *M.E. v. Alvin Indep. Sch. Dist.*, 840 F. App'x 773, 775 (5th Cir. 2020) (quoting *Rosa H.*, 106 F.3d at 652–53). Indeed, courts have held that evidence, such as that presented here, does not create a fact question regarding actual notice. *See M.E.*, 840 F. App'x at 776 (holding that where no school officials testified that they suspected sexual abuse despite being aware of a "likely inappropriately close" relationship between teacher and a student, there was no actual notice under Title IX based on knowledge of a substantial risk of abuse); *Gebser v. Lago Vista Indep. Sch. Dist.*, 524 U.S. 274, 291 (1998) (holding that complaints from parents regarding a teacher's sexually suggestive comments to students did give school district actual notice of sexual abuse by teacher); *Doe v. Northside I.S.D.*, 884 F. Supp. 2d 485, 493 (W.D. Tex. 2012) (finding no actual knowledge of abuse despite allegations that teacher had "boundary issues," hugged plaintiff, and gave chest bumps); *see also Doe v. Flaherty*, 623 F.3d 577, 585 (8th Cir. 2010) ("A student's familiar behavior with a teacher or even an 'excessive amount of time' spent with a teacher, without more,

does not 'automatically give rise to a reasonable inference of sexual abuse.'" (quoting *P.H. v. Sch. Dist. of Kansas City*, 265 F.3d 653, 659 (8th Cir. 2001)). As the Fifth Circuit suggested in *Rosa H.*, to show actual notice based on Defendant's knowledge of a substantial risk of sexual abuse, "the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." 106 F.3d at 658 (quoting *Farmer*, 511 U.S. at 837). Thus, to survive summary judgment on this element, Doe must offer evidence suggesting a faculty member made the requisite inference that Doe was being sexually abused or that there was a risk such abuse would occur. *See M.E.*, 840 F. App'x at 776.

None of Doe's evidence suggests actual notice prior to September 6, 2017. To start, though a JROTC student made comments about Doe performing oral sex on Edwards in May 2017, Doe adduces no evidence that a faculty member interpreted these comments to suggest that Doe was, or was at risk of, being sexually abused. *See* ECF No. 59-1 at 4–5. Rather, Plaintiff points to testimony by KISD's former School Resource Officer, Paul Gonzales ("SRO Gonzales"), that he would have interpreted the JROTC student's oral sex comments to be a report of educator sexual misconduct had he known of the remarks. *Id.* at 4; ECF No. 59-12 at 21–22. This testimony fails to establish that any faculty member made the requisite inference *at the relevant time*.

Next, while Brunz allegedly stated that Doe hugged both him and Edwards and that this made him "uncomfortable," ECF No. 59-1 at 30–31, Doe's evidence reveals that Brunz told Edwards this conduct was unprofessional, ECF No. 59-3 at 23. Moreover, according to the record, Brunz observed no further hugs between Doe and Edwards. *Id.* Again, there is no evidence that Brunz inferred from those hugs that Doe was being abused or at risk of being abused.

In addition, while Doe points out that on one occasion, SRO Gonzales observed Doe sitting in a sexually suggestive manner around Edwards, ECF No. 59-12 at 16–17, Doe points to no

evidence suggesting that any faculty member inferred from this incident Doe's sexual abuse, or a risk of sexual abuse, by Edwards, ECF No. 59-1 at 14–15. Instead, the record reveals that SRO Gonzales never inferred Doe's sexual abuse at the hands of Edwards or the risk that it would occur. *See* ECF No. 59-12 at 30.

Lastly, while Edwards issued twenty-four hall passes to Doe and sat next to her on a school bus on the way home from a field trip, Doe points to no evidence that any faculty member construed these facts as markers of sexual abuse or a risk that Edwards had sexually abused Doe or would in the future. ECF No. 59 at 12.

In sum, although the evidence suggests possible knowledge of an inappropriately close relationship between Edwards and Doe, the evidence does not present a fact question as to Defendant's actual notice of sexual abuse at the relevant time, or the awareness of a substantial risk that sexual abuse was occurring. *See Rosa H.*, 106 F.3d at 652–53, 656. Thus, the Court concludes that there is no genuine dispute of material fact as to Defendant's actual notice of Edwards's sexual abuse of Doe during the relevant period. Accordingly, Doe's Title IX claim premised on Edwards's abuse fails as a matter of law, and the Court **GRANTS** Defendant's motion for summary judgment on this claim.

### ii.  Abuse by Chatagnier

#### 1.  Actual Notice

According to Defendant, Doe never told anyone about Chatagnier's abuse and aside from one incident that was never reported to or witnessed by school personnel, Chatagnier's conduct occurred outside of school. ECF No. 51 at 5–6. In contrast, Doe argues that there was clear, actual notice of Chatagnier's harassment. First, Doe points to Principal Balser and Assistant Superintendent Ivy's knowledge of Doe's comment—"we hooked up"—made near the time of

Chatagnier's resignation, as a reference to sex. ECF No. 59 at 13. Second, Doe argues that Principal Balser warned Chatagnier in February 2018, telling him to keep Doe out of his classroom after her class with him ended. *Id.* at 13–14. Assistant Superintendent Ivy also met with Doe in February to warn her not to visit Chatagnier's classroom particularly considering Doe's abuse at the hands of Edwards. *Id.* According to Doe, this evidence shows that school administrators were aware of a substantial risk of serious harm. *Id.* at 14. Lastly, Doe argues that Dr. Young's observation of Doe kneeling behind Chatagnier's desk also supports notice. *Id.* at 14–15.

Here, the record reveals the existence of a fact question regarding whether Defendant had actual notice of Doe's abuse at the hands of Chatagnier. To start, it is undisputed that Defendant was aware of Edwards's abuse of Doe by the time of Chatagnier's inappropriate relationship. ECF No. 51-1 at 6–8; ECF No. 59-1 at 15–16. Further, Doe's evidence shows that Defendant had concerns about Chatagnier and Doe spending time together during February 2018. ECF No. 59-1 at 20–22; *see also* ECF No. 51-1 at 6–8; ECF No. 59-4 at 2–3. In addition, as Doe points out, Dr. Young sent an email in March 2018, to Principal Balser regarding Doe kneeling on the ground behind Chatagnier's desk. ECF No. 59-1 at 20–21. Taken together in the light most favorable to Doe, the Court holds this evidence gives rise to a fact issue regarding whether Defendant drew the requisite inference and "actually knew that there was a substantial risk that sexual abuse would occur." *See Rosa H.*, 106 F.3d at 652–53 (5th Cir. 1997).

## 2. Supervisory Authority

Next, Defendant argues that allegations of Chatagnier's knowledge regarding his own treatment of Doe cannot be imputed to Defendant. ECF No. 51 at 4. Defendant makes no further arguments regarding the knowledge of those with supervisory authority and Chatagnier. *See* ECF

No. 51. In response, Doe argues that school administrators and others with supervisory authority knew about the sexual harassment by Chatagnier. ECF No. 59 at 9–10.

Here, the record reveals the existence of a fact question regarding whether Assistant Superintendent Ivy or Principal Balser had actual notice of the substantial risk of Doe's abuse at the hands of Chatagnier. ECF No. 69 at 6–7. Considering school administrators' undisputed awareness of Doe's abuse at the hand of Edwards and the evidence suggesting school administrators had concerns regarding Doe's relationship with Chatagnier, ECF No. 69 at 14–15, the Court holds that a reasonable jury could find an appropriate person was aware of the substantial risk of Doe's sexual abuse at the hands of Chatagnier.

### 3.  Deliberate Indifference

Lastly, although Defendant urges the Court to hold that Doe cannot generate a genuine issue of material fact on its deliberate indifference to Chatagnier's abuse, Defendant's motion lacks any discussion of the adequacy of its response. No. 51 at 6–7. Instead, Defendant waits to argue this point in its reply. *Compare* ECF No. 51 at 6–7 *with* ECF No. 69 at 5–6. As Doe correctly points out, Defendant's motion fails to satisfy its initial burden on summary judgment. ECF No. 51 at 6.

Simply put, Defendant fails to shift its burden to Plaintiff to identify a fact issue as to Defendant's deliberate indifference to Chatagnier's abuse. Before the burden shifts to the nonmovant to establish that summary judgment is inappropriate, the movant "must submit evidence that *negates* the existence of some *material element* of the non-moving party's claim or defense, or, if the *crucial issue* is one for which the nonmoving party will bear the burden of proof at trial, merely point out that the evidence in the record is insufficient to support an *essential element* of the nonmovant's claim or defense. *Little*, 952 F.2d at 847 (emphasis added). "Although

Rule 56(e) does not allow a party to rest upon the mere allegations or denials of his pleading when his adversary moves for summary judgment, the Rule does not relieve the movant of his duty to establish the absence of a genuine issue as to material facts. The moving party still has the initial burden, under Rule 56(c), of showing the absence of a genuine issue concerning any material fact, and of showing that judgment is warranted as a matter of law." *Boazman v. Econ. Lab'y, Inc.*, 537 F.2d 210, 213–14 (5th Cir. 1976) (citations and quotation marks omitted). "The moving party does not meet this burden by simply laying out every potential point of disagreement with or counterargument to the opposing party's positions." *Perry v. Pediatric Inpatient Critical Care Servs.*, P.A., No. SA-18-CV-404-XR, 2022 WL 4456273, at *14 (W.D. Tex. Sept. 23, 2022). The purpose of summary judgment is to "pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial," not to force the nonmoving party to disclose every aspect of its anticipated trial strategy. Advisory Committee Note to 1963 Amendment of FED. R. CIV. P. 56(e). That is, the moving party must present at least *some* argument demonstrating the absence of a genuine issue of material fact as to an essential element for which the nonmoving party will bear the burden at trial. "The Court will not presume that Defendant has met its burden on summary judgment simply by virtue of having filed a motion." *Perry*, 2022 WL 4456273, at *14.

Defendant's motion is entirely silent on whether its response to the risk that Chatagnier was abusing Doe was deliberately indifferent, *see* ECF No. 59, and the arguments in its reply brief, ECF No. 69 at 5–6, are untimely. *Gillaspy v. Dallas Indep. Sch. Dist.*, 278 F. App'x 307, 315 (5th Cir. 2008) ("It is the practice of this court and the district courts to refuse to consider arguments raised for the first time in reply briefs."); *United States v. Jackson*, 426 F.3d 301, 304 n.2 (5th Cir. 2005) ("Arguments raised for the first time in a reply brief, even by pro se litigants . . . are

waived."). Defendant failed to meet its burden on summary judgment, and its motion is **DENIED** as to Doe's Title IX claim premised on Chatagnier's harassment.

### iii.   Unaddressed Teacher-on-Student Harassment Claim

Doe also alleges "teacher-student sexual harassment by teachers and Tivy High School administrators (Principal Shelby Balser in particular)." ECF No. 1 ¶ 55. Defendant fails to address this theory in both its motion and its reply. ECF No. 51 at 2–6. Accordingly, the Court agrees with Doe that "the motion does not address all of [Doe]'s Title IX hostile environment claims based on teacher-student sexual harassment." ECF No. 59 at 8.

Simply filing a motion does not entitle a party to summary judgment, and the Court declines to dispose of Doe's claim based on Defendant's failure to address it. *See Little*, 37 F.3d at 1075 ("If the moving party fails to meet this initial burden, the motion must be denied, regardless of the nonmovant's response."). To the extent that Defendant seeks summary judgment as to Doe's Title IX claim of harassment by other teachers and school administrators, its motion is **DENIED**.

### b.   *Unaddressed Student-on-Student Sexual Harassment Claim*

Similarly, although Doe asserted a claim for student-on-student sexual harassment under Title IX, the Court need not reach the merits of Defendant's challenge. Defendant devotes only a page to Doe's student-on-student sexual harassment claim, offering a deliberate indifference analysis that in fact bears on Doe's teacher-on-student sexual harassment claims rather than her student-on-student harassment claim. *See, e.g.*, ECF No. 59 at 7 ("Plaintiff proceeds to argue, however, that KISD should have investigated further to determine why the student might have made the comment. In doing so, Plaintiff seeks to impose a higher burden on KISD than the law would require.").[9] Indeed, Defendant fails to even recite the elements of a claim for student-on-

---

[9] Defendant's reply similarly fails to address the student-on-student sexual harassment claim. *See* ECF No. 69.

student sexual harassment under Title IX, let alone demonstrate how Plaintiff had failed to support any particular element. *See id.*[10] Defendant's motion fails to satisfy its initial summary judgment burden as to Doe's student-on-student sexual harassment claim, and the Court accordingly **DENIES** Defendant's motion on this claim.

### c. *Retaliation Under Title IX*

Next, Defendant insists, without explanation, that Plaintiff's retaliation claim fails as a matter of law. Again, the Court need not address this argument in great detail because Defendant's argument is entirely untethered from either the summary judgment standard or any substantive law on Title IX retaliation—neither citing a single case nor providing the general standard for Title IX retaliation. ECF No. 51 at 8–9. Without reference to any supporting authority, Defendant's conclusory assertions that its conduct did not constitute retaliation and that there is no causal link, amount to little more than a subjective belief with which the Court will not engage. *Cf. Jones v. Gulf Coast Rest. Grp., Inc.*, No. 21-60052, 2021 WL 3465000, at *4 (5th Cir. Aug. 6, 2021) (concluding that subjective belief of discrimination, however genuine, and conclusory statements cannot be the basis of judicial relief).

As mentioned above, a moving party must do more than simply conjure the words "summary judgment" to shift the burden to the nonmoving party on summary judgment. *Perry*, 2022 WL 4456273, at *14. Rather, the moving party must demonstrate that there is no genuine issue of material fact before the Court and that judgment in its favor is warranted as a matter of law. *Id.* Yet here, Defendant merely offers a page-long recitation of the facts followed by

---

[10] "A school district that receives federal funds may be liable for student-on-student harassment if the district (1) had actual knowledge of the harassment, (2) the harasser was under the district's control, (3) the harassment was based on the victim's sex, (4) the harassment was "so severe, pervasive, and objectively offensive that it effectively bar[red] the victim's access to an educational opportunity or benefit," and (5) the district was deliberately indifferent to the harassment." *Sanches v. Carrollton-Farmers Branch Indep. Sch. Dist.*, 647 F.3d 156, 165 (5th Cir. 2011) (citing *Davis ex rel. LaShonda D. v. Monroe Cnty. Bd. of Educ.*, 526 U.S. 629, 650 (1999)).

conclusory statements, contending that "Plaintiff cannot demonstrate that teacher's enforcement of regular classroom rules constitutes retaliation," and there is no "causal link between such enforcement and any protected activity on the part of Plaintiff." ECF No. 51 at 8–9. However, as Doe correctly points out: "The motion doesn't cite a single case or clearly identify the elements of retaliation that it contends [Doe] cannot prove beyond passing conclusory comments that classroom management isn't retaliation and denying a causal link." ECF No. 59 at 19 n.6. Accordingly, the Court **DENIES** Defendant's motion for summary judgment on Doe's Title IX retaliation claim.

### III.    Section 1983 Claims

While a school district cannot be held liable under a *respondeat superior* theory for the actions of a teacher, it can nonetheless be held liable for those actions for which it is responsible, such as when its official policies lead to constitutional violations. *See Monell v. Dep't of Soc.l Servs. of N.Y.*, 436 U.S. 658, 691 (1978). Under *Monell* "[a] claim of municipal liability under Section 1983 'requires proof of three elements: a policymaker; an official policy; and a violation of constitutional rights whose 'moving force' is the policy or custom.'" *Doe ex rel. Magee v. Covington Cnty. Sch. Dist. ex rel. Keys*, 675 F.3d 849, 866 (5th Cir. 2012) *(*quoting *Piotrowski v. City of Houston*, 237 F.3d 567, 578 (5th Cir. 2001)).

Here, Doe—asserting a violation of her Fourteenth Amendment right to bodily integrity—bases her claim on two theories. First, she seeks to hold Defendant liable under § 1983 for its official custom of failing to address sexual harassment. ECF No. 1 ¶¶ 114–20. [11] Second, Doe

---

[11] In her response, Doe explicitly states that her first § 1983 official policy theory is premised on Defendant's "widespread practice" of disregarding sexual harassment "that is so common and well-settled as to constitute custom that fairly represents municipal policy." ECF No. 59 at 22.

contends that Defendant is liable under a failure-to-train theory based on Defendant's failure to adequately train employees to address sexual harassment and child abuse. *Id.* ¶¶ 121–29.

### a. *Official Custom of Failing to Address Sexual Harassment*

A plaintiff can meet the second element under *Monell* where "a plaintiff can show a widespread practice that is so common and well-settled as to constitute custom that fairly represents municipal policy." *Webb v. Town of Saint Joseph*, 925 F.3d 209, 215 (5th Cir. 2019). The standard of showing such a custom is high. To survive summary judgment, a plaintiff must show more than isolated events, and even numerous incidents may not reveal a pattern sufficient for municipal liability under this theory. *See Peterson v. City of Fort Worth, Tex.*, 588 F.3d 838, 852 (5th Cir. 2009). Indeed, "[w]here prior incidents are used to prove a pattern, they 'must have occurred for so long or so frequently that the course of conduct warrants the attribution to the governing body of knowledge that the objectionable conduct is the expected, accepted practice of city employees.'" *Peterson v. City of Fort Worth, Tex.*, 588 F.3d 838, 850 (5th Cir. 2009); *accord Martinez v. Nueces Cnty., Texas*, 71 F.4th 385, 389 (5th Cir. 2023); *DeLeon v. Nueces Cnty.*, No. 23-40004, 2023 WL 4447023, at *2 (5th Cir. July 11, 2023).

Here, while Doe contends that Defendant disengaged its Title IX coordinator in response to her Title IX complaints and failed to follow its own policies, Doe points to no evidence beyond Defendant's responses to her own experiences and D'Spain's sexual misconduct to evidence Defendant's official custom of failing to address sexual harassment. ECF No. 59 at 21–24. Such evidence is not sufficient for a jury to conclude Defendant had "a widespread practice that is so common and well-settled as to constitute custom that fairly represents municipal policy." *See, e.g.*, *Peterson v. City of Fort Worth, Tex.*, 588 F.3d 838, 851 (5th Cir. 2009) (holding that twenty-seven incidents of excessive force over a four-year period "do not suggest a pattern 'so common and

well-settled as to constitute a custom that fairly represents municipal policy'" (quoting *Piotrowski*, 237 F.3d at 579)). Accordingly, the Court **GRANTS** Defendant's motion for summary judgment as to its alleged official custom of failing to address sexual harassment.

### b. Failure to Train

Under a failure-to-train theory, a plaintiff must show (1) the school district's training procedures were inadequate, (2) the school district was deliberately indifferent in adopting its training policy, and (3) the inadequate training policy was the moving force in causing a violation of a plaintiff's rights. *Valle v. City of Houston*, 613 F.3d 536, 544 (5th Cir. 2010). Defendant argues that Doe can meet none of the requisite elements. Here, Defendant is correct as Doe has failed to adduce the requisite evidentiary support to survive summary judgment.

A municipal entity's decision not to train or supervise its employees about their legal duty to avoid violating citizens' rights may rise to the level of an official policy for purposes of Section 1983. *City of Canton v. Harris*, 489 U.S. 378, 387, (1989). When a municipal entity enacts a facially valid policy but fails to train its employees to implement it in a constitutional manner, that failure constitutes "official policy" that can support municipal liability if it "amounts to deliberate indifference." *Littell v. Houston Indep. Sch. Dist.*, 894 F.3d 616, 624 (5th Cir. 2018) (quoting *Canton*, 489 U.S. at 388). "Deliberate indifference is more than mere negligence." *See Sanders-Burns v. City of Plano*, 594 F.3d 366, 381 (5th Cir. 2010). It is "a stringent standard of fault, requiring proof that a municipal actor disregarded a known or obvious consequence of his action." *Connick v. Thompson*, 563 U.S. 51, 61 (2011). When policymakers are on actual or constructive notice that a particular omission in their training program causes municipal employees to violate citizens' constitutional rights, the municipal entity may be deemed deliberately indifferent if the policymakers choose to retain that program. *Id.*

Deliberate indifference may be established in two ways. First, "deliberate indifference generally requires that the plaintiff demonstrate 'at least a pattern of similar violations' arising from training that is so clearly inadequate as to be 'obviously likely to result in a constitutional violation.'" *Burge v. St. Tammany Par.*, 336 F.3d 363, 370 (5th Cir. 2003). This proof-by-pattern method is "ordinarily necessary." *Littell*, 894 F.3d at 624 (citing *Bd. of Cnty. Comm'rs v. Brown*, 520 U.S. 397, 409 (1997)). Alternatively, deliberate indifference can be shown "in a limited set of cases" by "showing a single incident with proof of the possibility of recurring situations that present an obvious potential for violation of constitutional rights." *Burge*, 336 F.3d at 372.

Deliberate indifference can be inferred from a single incident when the risk of constitutional violation was or should have been an "obvious" or "highly predictable consequence" of the alleged training inadequacy. *Id.* (citing *Bd. Of Cnty. Comm'rs of Bryan Cnty. v. Brown*, 520 U.S. 397, 409 (1997)). But "[s]uch an inference is possible in only very narrow circumstances: The municipal entity must have 'fail[ed] to train its employees concerning a clear constitutional duty implicated in recurrent situations that a particular employee is certain to face.'" *Littell*, 894 F.3d at 625 (quoting *Canton*, 489 U.S. at 396 (O'Connor, J., concurring)). "Under [such] circumstances there is an obvious need for some form of training." *Connick*, 563 U.S. at 64. Without proof of a pattern of constitutional violations, however, the failure to train generally must be "complete," rather than merely deficient in a particular narrow respect. *Peña v. City of Rio Grande*, 879 F.3d 613, 624 (5th Cir. 2018); *see, e.g.*, *Littell*, 894 F.3d at 625 ("[T]he 'official municipal policy' on which Plaintiffs attempt to hang *Monell* liability is the school district's alleged policy of providing *no training whatsoever* regarding its employees' legal duties not to conduct unreasonable searches."); *Drake v. City of Haltom*, 106 F. App'x 897, 900 (5th Cir. 2004)

("We are unwilling to say, at th[e pleading stage], that it is not obvious that male jailers who receive no training and who are left virtually unsupervised might abuse female detainees").

The Court does not dispute that a school's failure to provide any training on matters of sexual harassment and abuse would amount to deliberate indifference. Nonetheless, Plaintiff's failure-to-train claim fails because the summary judgment record reveals that KISD employees did in fact receive training on sexual harassment. Indeed, it appears undisputed that Defendant required employees to complete annual training on sexual harassment and abuse and offered this training on an ongoing basis. ECF No. 51 at 11; ECF 51-4 ¶ 11; ECF No. 59-31 at 10–82.[12] This training exceeded state-law requirements, which only mandate such training for *new* employees. *See* TEX. EDUC. CODE § 38.0041; 19 TEX. ADMIN. CODE § 61.1051. Defendant's regularly required training counsels against a finding of deliberate indifference. *Zarnow v. City of Wichita Falls, Tex.*, 614 F.3d 161, 171 (5th Cir. 2010) (considering "compliance with state requirements as a factor counseling against a 'failure to train' finding").

Likewise, although Doe further asserts that "[h]andbooks . . . are not training," ECF No. 59-1 at 13, courts have considered employee handbooks when evaluating § 1983 liability under a failure-to-train theory. *See J.T. v. Uplift Educ.*, No. 3:20-CV-3443-D, 2023 WL 4207462, at *16 (N.D. Tex. June 27, 2023) (considering policies set forth in an employee handbook in assessing a

---

[12] Doe takes issue with Assistant Superintendent Ivy's declaration submitted in support of Defendant's motion for summary judgment, arguing that "KISD provided the bare minimum (or even less) training to its employees and no training at all to students and their families." ECF No. 59 at 26. But Doe's own evidence corroborates the Ivy declaration. *See* ECF No. 59-31 at 10–22, 63–82 (providing Defendant's annual sexual harassment training and Texas Educators' Ethics Training on Teacher & Student Personal Boundaries presentation); ECF No. 59-8 at 41 (Dr. Shakeshaft's testimony acknowledging that the Texas Education Agency conducted training after the September 2017 reports); ECF No. 59-23 (September 20, 2017 agenda meeting notes stating that faculty will discuss "training provided by the Texas Education Agency on Educator Ethics"). Moreover, Doe's suggestion that "[d]uring deposition, Ivy admitted he did not have any Title IX training when he responded to [Doe]'s reports of sexual harassment," appears to mischaracterize Assistant Superintendent Ivy's testimony. ECF No. 59-1 at 11; ECF No. 59-9 at 15 (Assistant Superintendent Ivy stating that while he had "never been in a training that said this is Title IX training." But that he had "been trained in elements of . . . Title IX procedures and requirements.").

failure-to-train theory where the employee was required to agree to comply with the handbook as a condition of employment). Defendant's employee handbooks for the 2016–2017 and 2017–2018 school years each require employees to confirm they have read the handbook and agree to abide by the standards set forth within. ECF No. 51-13 at 5, ECF No. 51-14 at 5.

Citing expert testimony by Dr. Charol Shakeshaft, Doe suggests that KISD should have taken a different approach to training faculty members by specifically training them to recognize sexual misconduct and its warning signs, and that Defendant should have trained students and parents to recognize and report sexual harassment. ECF No. 59 at 26; ECF No. 59-1 at 12–13. [13] Doe contends that Defendant's policy "is a completely reactive approach that violates the purpose of Title IX and puts children in danger." *Id.* "A policy that deliberately ignores prevention," she argues, "is a policy that deliberately allows sexual misconduct to happen." *Id.*

Plaintiff has failed, however, to establish a complete failure to train KISD employees on students' Fourteenth Amendment rights. In addition, Dr. Shakeshaft's general assertions that the training should have been different do not establish a fact issue precluding summary judgment. *See, e.g.*, *Doe v. Edgewood Indep. Sch. Dist.*, No. 5:16-CV-01233-OLG, 2019 WL 1118516, at *11 (W.D. Tex. Mar. 8, 2019), *amended on reconsideration on other grounds*, No. SA-16-CV-1233-OG, 2019 WL 13418261 (W.D. Tex. July 10, 2019), *and aff'd*, 964 F.3d 351 (5th Cir. 2020) (granting summary judgment on failure-to-train theory because plaintiff could not establish deliberate indifference where defendant school district offered sexual harassment training yearly and plaintiff could only point to an expert's general reflections on what constitutes an adequate

---

[13] Notably, Doe points the Court to no authority, and the Court has found none, suggesting Defendant is required to train parents and students to preclude liability under a failure-to-train theory. Failure-to-train theories are properly premised on a defendant's failure to train its employees, not its failure to train third parties. *See, e.g.*, *City of Canton, Ohio v. Harris*, 489 U.S. 378, 387 (1989) ("The claim in this case, however, is that if a concededly valid policy is unconstitutionally applied by a municipal employee, the city is liable if *the employee* has not been adequately trained and the constitutional wrong has been caused by that failure to train." (emphasis added)).

training). Indeed, Doe's own evidence shows that Defendant's sexual harassment training covered (1) what constitutes teacher-on-student harassment, (2) an employee's duty to recognize and report sexual harassment, and (3) the steps of investigating sexual harassment. *See* ECF No. 59-31 at 15–20.[14]

Next, Doe contends that because Edwards, D'Spain, and Chatagnier all sexually abused students over the course of a year, this pattern shows that Defendant was deliberately indifferent to training its employees about educator sexual misconduct. ECF No. 59 at 24. Here, the record shows that Defendant first learned of two of the three instances of sexual abuse in September 2017. ECF No. 59-1 at 5. Thereafter, Defendant conducted additional faculty training on professional boundaries and provided information on reporting procedures to students. *See* ECF No. 59-23; ECF No. 59-24; ECF No. 59-8 at 41. Again, beyond Dr. Shakeshaft's general reflections, Doe points to no evidence suggesting that this "pattern of similar violations" arose because the annual training or supplemental training after September 2017 was obviously inadequate and likely to result in a constitutional violation. *See* ECF No. 59. Indeed, Doe must show that this pattern arose from training that is so clearly inadequate as to be "obviously likely to result in a constitutional violation." *Burge v. St. Tammany Par.*, 336 F.3d 363, 370 (5th Cir. 2003). Simply put, Doe's evidence on this issue does not establish a fact issue sufficient to preclude summary judgment. *See Edgewood*, 2019 WL 1118516, at *11. Given the high bar for establishing deliberate indifference, the Court concludes as a matter of law that Defendant did not have a "pattern or practice" of failing to train its employees on matters of sexual abuse and assault.

Accordingly, Defendant's motion for summary judgment is **GRANTED** as to Plaintiff's failure-to-train claim under § 1983.

---

[14] The Court recognizes that this training is marked for the 2021-2022 school year; however, Defendant represented that this training was given during 2016–2019. ECF No. 59-31 at 9–22.

## CONCLUSION

For the foregoing reasons, Defendant's motion for summary judgment (ECF No. 51) is **GRANTED IN PART** and **DENIED IN PART**. The motion is **GRANTED** as to (1) Doe's Title IX claim for teacher-on-student harassment by Edwards, (2) her § 1983 claim premised on Defendant's official custom of failing to address sexual harassment, and (3) her failure-to-train claim under § 1983, and those claims are **DISMISSED WITH PREJUDICE**. The motion is otherwise **DENIED** in all respects.

Plaintiff's Title IX claims for teacher-on-student harassment by Chatagnier and by other teachers and administrators, student-on-student harassment, and retaliation survive.

It is so **ORDERED**.

**SIGNED** this 30th day of November, 2023.

_____
XAVIER RODRIGUEZ
UNITED STATES DISTRICT JUDGE