**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION**

| | | |
|---|---|---|
| JANE DOE, | § | |
| *Plaintiff* | § | |
| | § | SA-21-CV-00369-XR |
| -vs- | § | |
| | § | |
| KERRVILLE INDEPENDENT SCHOOL | § | |
| DISTRICT, | § | |
| *Defendant* | § | |

## ORDER

The Court, having considered Defendant's motion for judgment as a matter of law (ECF No. 129) and the parties' arguments before the Court on April 11, 2024, issues the following order.

## BACKGROUND

The Court presided over a four-day jury trial in this Title IX of the Education Amendments of 1972 ("Title IX") and 42 U.S.C. § 1983 case.

Following Plaintiff's case-in-chief, Defendant moved for judgment as a matter of law under Rule 50 of the Federal Rules of Civil Procedure. After hearing arguments from both parties, the Court granted the motion from the bench as to all of Plaintiff's claims. As stated in open court and set out more fully herein, the Court concludes, in light of the stringent standards for liability under both Title IX and Section 1983, that Plaintiff failed to adduce sufficient evidence to allow a reasonable jury to render a verdict in her favor.

## EVIDENCE PRESENTED AT TRIAL

Plaintiff Jane Doe ("Doe") was a high school student in Defendant Kerrville Independent School District ("Kerrville ISD") at Tivy High School ("Tivy"). Doe alleges that, during 2017 and 2018, she suffered sexual abuse by two teachers—Air Force JROTC Instructor Lieutenant Colonel

(Ret.) Christopher Edwards ("Edwards") and Aaron Chatagnier ("Chatagnier")—as well as harassment by school faculty and other students on multiple occasions.

Doe asserts that she was sexually harassed by Edwards from January 2017 until September 2017. Doe ultimately reported this harassment to another JROTC Instructor, Chief Master Sargent (Ret.) Fred Brunz ("Brunz") on September 6, 2017. The next day, Brunz reported Doe's allegations to school administrators, who then notified Child Protective Services and the Kerrville Police Department. Def.'s Ex. 52; Def.'s Ex. 32. Days later, Edwards resigned from his position.[1] Def.'s Ex. 32.

After learning of Edwards's sexual misconduct, Tivy Principal Shelby Balser ("Balser") gave presentations to students and teachers about maintaining proper teacher-student relationships. *See* Def.'s Ex. 51. Among other things, Dr. Mark Foust ("Dr. Foust"), Kerrville ISD's former superintendent, testified that Kerrville ISD provided additional training to teachers on maintaining professional relationships. In addition, Dr. Foust sent two letters to Tivy parents notifying them of the allegations of an inappropriate teacher-student relationship. Def.'s Ex. 52.

Doe testified that after Edwards's resignation, rumors spread around Tivy regarding Doe's relationship with Edwards, impacting the way other students interacted with her. Doe testified, without providing any specific details, that immediately after reporting the Edwards' abuse in September 2017, other students began looking at Doe differently, calling her sexual slurs, ostracizing her, bullying her, and blaming her for the firing of a favorite teacher.

---

[1] The Court previously granted summary judgment as to any claims based on Edwards's conduct, since it was uncontested that Kerrville ISD had no actual notice of any sexual harassment or misconduct by Edwards prior to Doe's outcry. ECF No. 82. Accordingly, this order focuses on conduct by Chatagnier; conduct by other Tivy teachers, school administrators, and students; and Kerrville ISD's response.

In addition, Doe and her parents testified they believed that teachers treated Doe differently from other students after she reported her sexual harassment by Edwards. Doe testified that during Spring 2018, her second-period teacher, Julie Jones ("Ms. Jones"), called Doe a "whore" in front of other students in response to Doe and her classmates' inappropriate response to a school assignment.[2] In addition, Doe and her father testified that school administrators and teachers "dress coded" Doe an unspecified number of times, allegedly doing so on one occasion in front of other students. Doe also testified that after reporting Edwards, another teacher, Ms. Starry, said something that Doe interpreted as embarrassing.[3]

After Edwards's resignation, Chatagnier began to provide math tutoring to Doe. On December 6, 2017, Ms. Jones emailed Chatagnier, asking that he release Doe from her first-period math class to Ms. Jones's second-period class in a timely manner. Def.'s Ex. 46; Def.'s Ex. 51. Chatagnier responded brusquely, stating that Doe needed help in her math studies, that his class was more important than Ms. Jones's class, that he was not holding Doe against her will, and that Doe needed compassion. Pl.'s Ex. 3. Thereafter, Balser admonished Chatagnier for the unprofessional tone exhibited in the email, and he acknowledged that he responded inappropriately. Def.'s Ex. 46; Def.'s Ex. 49; Def.'s Ex. 53.

In early February 2018, Balser learned that Doe was spending time in Chatagnier's class during sixth and seventh periods, when Doe was supposed to be off campus for a work-study

---

[2] Doe and her classmates were directed to pick a career, write about it, and draw a picture. In response, Doe and her classmates elected to draw a male exotic dancer wearing only underwear. As a result, Doe and the two other classmates who completed the assignment were given lunch detention. Allegedly, in response to receiving this assignment from the students, Ms. Jones called Doe a "whore" and referenced Doe's relationship with Edwards. Ms. Jones denied calling Doe a whore. The record is not clear about whether Ms. Jones specifically referenced Doe's relationship with Edwards.

[3] The statement made by the teacher and attempted to be repeated by Doe called for hearsay and was excluded from evidence. The record is unclear whether Ms. Starry was referencing the Doe or another student.

position. Def.'s Ex. 46. As a result, on February 7, 2018, Balser told Chatagnier that he needed to keep Doe from being in his classroom at unscheduled times. Def.'s Ex. 45.

That same day, Doe's mother, emailed Assistant Superintendent Wade Ivy ("Ivy") to complain that Doe felt as if she was being "watched" by school administrators and to criticize school administrators for expressing concerns regarding the association between Doe and Chatagnier. Pl.'s Ex. 5. Doe's mother stated that Chatagnier was a family friend and that he was "vital in [Doe] not falling apart." *Id.*

In response to the email, Ivy met with Doe and her parents. Ivy testified that at that meeting, Doe's parents asked that Chatagnier's tutoring of Doe continue. Ivy also testified that he told Doe's parents that, though school administrators would not allow the tutoring to continue at Tivy, he could not control whether the parents elected to have Chatagnier continue tutoring Doe off campus. In addition, Balser, Ivy, and Assistant Principal Chris Cook ("Cook") met with Chatagnier on February 20, and admonished him that he needed to conduct himself appropriately and maintain professional boundaries with Doe. Def. Ex. 45; Def. Ex. 46.

Around this time, since Chatagnier was prohibited from tutoring Doe at the Tivy campus, Doe testified that Doe and Chatagnier began meeting off campus with the consent of Doe's parents at Schriener University.[4] Doe testified that it was during these off-campus tutoring sessions that Chatagnier actions towards Doe turned overtly sexual. However, Doe testified that she did not report this to school officials.

On March 1, 2018, Dr. Kendall Young ("Young"), Tivy's lead academic counselor at the time, encountered Doe kneeling on the floor of Chatagnier's class near his desk, while other

---

[4] Doe testified that in order to travel to the off-campus tutoring with Chatagnier, she needed to get permission to use the family car, or be late to family dinner, so it is clear that her parents were aware that the off-campus tutoring was taking place, but there was no evidence adduced in trial that any KISD employee had any knowledge of the off-campus tutoring.

students were in the room. Def.'s Ex. 55. The next day, Young emailed Balser to express her concerns that Doe was not following the school's orders to attend her regular classes, that she was forming an unhealthy relationship with Chatagnier, and that Chatagnier was not maintaining appropriate boundaries with Doe. *Id.*

Four days later, Balser provided Chatagnier with a written directive telling Chatagnier that students could only be in his classroom at their assigned times and instructed him to maintain appropriate professional boundaries between himself and his students. Def.'s Ex. 64. Attached to this written directive was also a professional boundaries self-assessment. *Id.* Ivy testified that, on March 7, 2018, Chatagnier received additional ethics training.

On April 25, 2018, Balser began investigating a report from Ms. Jones that Doe was not in her assigned class on April 13 and that Doe was instead near Chatagnier's classroom at the time. Def.'s Ex. 43; Def.'s Ex. 46. Upon review of security camera footage, Balser confirmed that Doe was in Chatagnier's classroom at the time, in violation of the written directive issued to Chatagnier. Def.'s Ex. 43; Def.'s Ex. 46.

On April 27, Balser learned that Chatagnier and Doe were wearing matching t-shirts and that Doe had told another student that she "hooked up" with Chatagnier over the weekend. Def.'s Ex. 46. Though Balser's investigation ultimately failed to uncover the truth at the time, Doe testified that Doe and Chatagnier attended a car show in Fredericksburg together over the weekend of April 20, 2018, and on this trip, Chatagnier and Doe engaged in sexual intercourse. Notably, around this time, Balser followed up with Doe's family regarding the car show. Both Balser and Doe's mother testified that Doe's mother lied and stated that Doe had attended the car show with her father, when Balser asked whether Doe went to the car show with Chatagnier. Def.'s Ex. 46.

On April 30, Balser, Ivy, and Cook met with Chatagnier regarding the April 13 incident as well as Doe's "hooked up" comments. Balser posed a number of questions to Chatagnier. Pl.'s Ex. 14. In this meeting, Chatagnier told school administrators that he had seen Doe and her father at the car show. Def.'s Ex 46. Balser testified that Chatagnier then lied regarding Doe's location on April 13, to which school administrators confronted Chatagnier with the camera footage. In response, Chatagnier admitted that Doe had been in his classroom on April 13. Pl.'s Ex. 14; Def.'s Ex. 45. In addition, Chatagnier informed them that Doe had threatened suicide on several occasions, which he failed to report to the appropriate school authorities. Pl.'s Ex. 14; Def.'s Ex. 45.

During this meeting, Ivy informed Chatagnier that the school administrators would recommend his immediate termination for failing to follow their verbal and written directives to maintain a professional relationship with Doe, for being untruthful regarding Doe's presence on April 13, and for failing to appropriately report a student's threat of suicide. Def.'s Ex. 45. That same day, Chatagnier resigned. *Id.*

In addition, that same day, Doe and her mother spoke to Balser and expressed outrage at Chatagnier's resignation. Def.'s Ex. 46. At the time, Doe did not report any inappropriate behavior by Chatagnier. *Id.*

In early May 2018, Balser sent a letter to some Tivy parents regarding Chatagnier's resignation. Def.'s Ex. 62. Balser testified that this was required as Chatagnier's resignation resulted in a change in the teacher of record. In addition, Doe's mother emailed Ivy, Balser, and Young regarding an inappropriate social media post referencing Doe's relationship with Edwards and Chatagnier. Def.'s Ex. 35. Thereafter, Balser investigated the post and disciplined the students responsible. *Id.*

On May 7, 2018, Dr. Foust sent a letter to the State Board for Educator Certification, Director of Educator Investigation, regarding Chatagnier's resignation. Def.'s Ex. 45. The letter reiterated the reasons given to Chatagnier for his possible termination, but also noted "there is no claim of, or evidence that a sexual or romantic relationship exists." *Id.*

Around this time, Doe and her family voluntarily elected to transfer Doe from Tivy to Hill Country High School to complete her high school education. Def.'s Ex. 41.

Doe testified that she never told anyone about any physical or sexual relationship with Chatagnier until she told her lawyers more than two years after Chatagnier's resignation. Other evidence presented at trial shows that the Kerrville Police Department informed the school district of Doe's allegations on June 2, 2020. Pl.'s Ex. 38.

## DISCUSSION

### I.     Legal Standard

Judgment as a matter of law is proper where there is no legally sufficient evidentiary basis for a reasonable jury to find for the non-moving party. FED. R. CIV. P. 50. This Court must draw all reasonable inferences in favor of the non-moving party but may not assess the credibility of witnesses or weigh the evidence. *See Harris v. FedEx Corp. Servs., Inc.*, 92 F.4th 286, 297 (5th Cir. 2024). More specifically, this Court should give credence to the evidence favoring the non-moving party and any uncontradicted or unimpeached evidence supporting the moving party where such evidence comes from disinterested witnesses. *Raggs v. Mississippi Power & Light Co.*, 278 F.3d 463, 467 (5th Cir. 2002) (affirming the magistrate judge's grant of judgment as a matter of law regarding the claims of race discrimination and retaliation under Title VII of the Civil Rights Act of 1964 and 42 U.S.C. § 1981).

Rule 50 entitles the movant to judgment as a matter of law when a party has been fully heard on an issue and the court finds that a reasonable jury would not have a legally sufficient evidentiary basis to find for that party on that issue. Evidence is legally insufficient "when the facts and inferences point so strongly and overwhelmingly in the movant's favor that reasonable jurors could not reach a contrary verdict." *Fairchild v. All Am. Check Cashing, Inc.*, 815 F.3d 959, 966 (5th Cir. 2016). Therefore, "[i]n considering a Rule 50 motion, the court must review all of the evidence in the record, drawing all reasonable inferences in favor of the nonmoving party; the court may not make credibility determinations or weigh the evidence, as those are jury functions." *Id.* at 966.

## II.    Analysis

### a.  Title IX Claims

#### i.    Teacher-on-Student Sexual Harassment

To recover for teacher-on-student sexual harassment, a plaintiff must show that "(1) a school district employee with supervisory power over the offending teacher (2) had actual notice of the harassment and (3) responded with deliberate indifference." *King v. Conroe Indep. Sch. Dist.*, 289 F. App'x 1, 4 n.3 (5th Cir. 2007) (citing *Gebser v. Lago Vista Indep. Sch. Dist.*, 524 U.S. 274, 290 (1998)).

A school district must have actual notice of teacher-on-student sexual harassment. *See Gebser*, 524 U.S. at 292. Constructive notice is not enough. *Rosa H. v. San Elizario Indep. Sch. Dist.*, 106 F.3d 648, 656 (5th Cir. 1997). In the Fifth Circuit, actual notice means that "the school must have actual knowledge that harassment has occurred, is occurring, or that there is a 'substantial risk that sexual abuse would occur.'" *Roe v. Cypress-Fairbanks Indep. Sch. Dist.*, 53 F.4th 334, 341 (5th Cir. 2022) (quoting *M.E. v. Alvin Indep. Sch. Dist.*, 840 F. App'x 773, 775 (5th

Cir. 2020)). "Accordingly, liability requires that 'the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference.'" *Roe*, 53 F.4th at 341 (quoting *Rosa H.*, 106 F.3d at 659). "Whether an official had actual notice is a question of fact. Thus, [this] question of . . . actual notice may be resolved as a matter of law where . . . the facts are not in dispute." *Doe ex rel. Doe v. Dall. Indep. Sch. Dist.*, 220 F.3d 380, 384–85 (5th Cir. 2000) (citations omitted).

Further, to establish liability under Title IX for teacher-on-student sexual harassment, a plaintiff must show not only that a defendant had actual notice of the harassment, but that a person with actual notice "was an official with the power to remedy discrimination." *Doe ex rel. Doe v. Dallas Indep. Sch. Dist.*, 220 F.3d at 384. "[T]o be an 'appropriate person' under Title IX, the official must have authority to both 'repudiate th[e] conduct and eliminate the hostile environment.'"[5] *Doe v. Edgewood Indep. Sch. Dist.*, 964 F.3d 351, 360 (5th Cir. 2020) (second alteration in original) (quoting *Rosa H.*, 106 F.3d at 661). In general, this person's authority "must include the power to terminate or discipline." *Id.*

A plaintiff must also present evidence that the defendant acted with deliberate indifference to the harassment. Indeed, the "deliberate indifference standard is a high one." *Doe ex rel. Doe v. Dallas Indep. Sch. Dist.*, 220 F.3d at 384 (quoting *Doe ex rel. Doe v. Dallas Indep. Sch. Dist.*, 153 F.3d 211, 219 (5th Cir. 1998)). "Officials may avoid liability under a deliberate indifference standard by responding reasonably to a risk of harm, 'even if the harm ultimately was not averted.'" *Id.* (quoting *Farmer v. Brennan*, 511 U.S. 825, 844 (1994)). In discussing the deliberate indifference standard under § 1983, the Fifth Circuit noted that it could "foresee many good faith

---

[5] Although the harasser himself has, by definition, the power to eliminate the hostile environment—by simply refraining from the harassing behavior—the harasser's own awareness that his conduct constitutes harassment will not satisfy this element. *Salazar v. S. San Antonio Indep. Sch. Dist.*, 953 F.3d 273, 284–85 (5th Cir. 2017).

but ineffective responses that might satisfy a school official's obligation in these situations, e.g., warning the state actor, notifying the student's parents, or removing the student from the teacher's class." *Doe v. Taylor Indep. Sch. Dist.*, 15 F.3d 443, 457 (5th Cir. 1994). A school district's failure to follow its own policy does not render that school district's actions clearly unreasonable and thus deliberately indifferent. *See Sanches v. Carrollton-Farmers Branch Indep. Sch. Dist.*, 647 F.3d 156, 169 (5th Cir. 2011) (quoting *Gebser v.* 524 U.S. at 291–92). "So long as a school district's response is not 'clearly unreasonable in light of the known circumstances,' we 'refrain from second-guessing the disciplinary decisions made by school administrators.'" *Menzia v. Austin Indep. Sch. Dist.*, 47 F.4th 354, 364 (5th Cir. 2022) (quoting *Davis v. Monroe Cnty. Bd. of Educ.*, 526 U.S. 629, 648 (1999)). Moreover, "[a]ctions and decisions by officials that are merely inept, erroneous, ineffective, or negligent do not amount to deliberate indifference[.]" *I.F. v. Lewisville Indep. Sch. Dist.*, 915 F.3d 360, 369 (5th Cir. 2019) (quoting *Doe ex rel. Doe v. Dallas Indep. Sch. Dist.*, 153 F.3d at 219).

### 1.  Sexual Abuse by Aaron Chatagnier

To begin, this case is a sad one. Doe should never have been subjected to sexual abuse by her teachers. No doubt both teachers should have received criminal punishment. Further, Doe could have brought a civil action against them for any damage she suffered. But this case centers on whether the school district can and should be held liable under Title IX.

A school district is only deliberately indifferent to a report of sexual harassment if it responds in a manner that is clearly unreasonable in light of the known circumstances. *Menzia*, 47 F.4th at 361. "Negligent delays, botched investigations of complaints due to the ineptitude of investigators, or responses that most reasonable persons could have improved upon do not equate

to deliberate indifference." *Brend v. Copperas Cove Indep. Sch. Dist.*, 823 F. App'x 261, 263 (5th Cir. 2020) (quoting *I.F*, 915 F.3d at 369).

At trial, Doe elicited testimony from Ivy as well as Doe's expert Charol Shakeshaft that Kerrville ISD's response could have been more robust.[6] In addition, Doe elicited testimony from Dr. Foust noting that his May 8, 2018 letter failed to disclose certain comments made by Doe as well as all known interactions between Doe and Chatagnier.[7] Def.'s Ex. 45.

However, the trial evidence shows a series of escalating steps taken by school administrators to prevent any untoward relationship from developing between Doe and Chatagnier. For example, in February 2018, administrators met with Doe and Doe's family regarding what administrators viewed as a developing inappropriate and unprofessional relationship between Doe and Chatagnier. Def.'s Ex. 46. During this meeting, school administrators told Doe and her family that they would not allow Chatagnier to tutor Doe outside of Doe's scheduled class and when Chatagnier was supposed to be teaching other students. At the time, Doe's family expressed concern that the school was reading too much into Doe and Chatagnier's relationship, pressuring the school district to allow Chatagnier to continue tutoring Doe. Def.'s Ex. 37.

After this February 2018 meeting, school administrators kept an eye on Chatagnier and Doe, issuing a written directive to Chatagnier in March 2018 after learning that Doe continued to attend Chatagnier's class when she was not scheduled to be there, and meeting with Chatagnier regarding the need to maintain appropriate teacher student boundaries. Def. Ex. 64. Moreover, Ivy testified that Kerrville ISD required Chatagnier to undergo additional ethics training because of

---

[6] Doe argues that Dr. Foust was the Title IX administrator for the school district, but negligently delegated his duties to another official without doing so in writing. This is one mistake, among many, by the school district, but the on the ground reality is that inquiries were done by school officials, whether these inquiries were called Title IX investigations or not.

[7] The Court observes, however, that this allegation is a red herring. At the time this letter was written, school officials had no knowledge that Chatagnier had engaged in any physical contact with Doe. Further, by the time this letter was written, Chatagnier had resigned.

Chatagnier's failure to maintain professional boundaries with Doe. That is, school administrators repeatedly reminded Chatagnier of the importance of professional boundaries. Nonetheless, during April 2018, when Balser's investigation revealed that Chatagnier was being untruthful with school administrators and that Chatagnier failed to comply with written directives, school administrators informed Chatagnier that they would recommend his termination. Def.'s Ex. 45.

Doe faults Kerrville ISD for not engaging in a more comprehensive investigation of Chatagnier and his relationship with Doe after learning in April 2018 that Doe told other students that she and Chatagnier "hooked up." However, Balser testified that she followed up with both Chatagnier and Doe's parents regarding this comment. Both Balser and Doe's mother testified that Doe's parents lied to school administrators, corroborating Chatagnier's untruthful version of events.

In sum, Doe only raises arguments that Kerrville ISD should have done more to prevent Chatagnier from abusing Doe. Though Kerrville ISD's response in this case did not ultimately prevent Doe's sexual abuse, that is not the standard. *See Doe ex rel. Doe v. Dallas Indep. Sch. Dist.*, 220 F.3d at 384 ("Officials may avoid liability under a deliberate indifference standard by responding reasonably to a risk of harm, 'even if the harm ultimately was not averted.'") (quoting *Farmer*, 511 U.S. at 844)). It can hardly be said that Kerrville ISD acted with deliberate indifference based on the evidence presented at trial.

Accordingly, the Court holds that a reasonable jury could not find Kerrville ISD acted with deliberate indifference to any knowledge of Chatagnier's abuse, and the Court **GRANTS** Kerrville ISD's motion for judgment as a matter of law with respect to Doe's teacher-on-student sexual harassment by Chatagnier.

12

### 2.  Harassment by Other Teachers and Administrators

To hold Kerrville ISD liable for harassment by other teachers and school administrators, Doe must present evidence of harassment that is so severe, pervasive, and objectively offensive that it effectively barred her access to educational opportunities or benefits. *See S.P. v. Ne. Indep. Sch. Dist.*, No. SA-21-CV-0388-JKP-RBF, 2021 WL 3272210, at *6 (W.D. Tex. July 30, 2021) (holding that the requirement that harassment is so severe, pervasive, and objectively offensive that it effectively bars the victim's access to an educational opportunity or benefit is "inherent in Title IX itself" and applies in cases of teacher-on-student harassment). In addition, Doe must meet the three elements laid out above to recover for teacher-on-student harassment under Title IX. *See King*, 289 F. App'x 4 n.3.

At trial, Doe testified that (1) Ms. Starry, on one occasion, allegedly said something that Doe felt was embarrassing; (2) Ms. Jones, on one occasion, allegedly called Doe a "whore" in front of other students, commenting on Doe's reputation and her relationship with Edwards after Doe and a group of classmates provided an inappropriate response to a class assignment; (3) Doe was "dress coded" for her attire on multiple, unspecified occasions by teachers and administrators, once in front of other students; and (4) the school's resource officer followed Doe around campus on unspecified occasions. In addition, Doe presented evidence that school administrators issued two letters to parents notifying them of allegations made against the school district regarding allegations of inappropriate teacher-student relationships, which allowed unspecified members of the community to identify Doe as the victim of Edwards's sexual harassment. Def.'s Ex. 51; Def.'s Ex. 52.

To begin, no evidence was presented by Doe that the alleged harassment by teachers and school administrators effectively barred Doe's access to educational opportunities or benefits.

Otherwise, while Doe testified to isolated incidents of alleged verbal harassment, testified to "being followed" on an unspecified number of occasions by the school resource officer, and presented evidence that Dr. Foust issued two letters to Tivy parents, Doe did not testify to persistent, severe comments made by teachers and school administrators such as those made in *Hayut*, 352 F.3d at 745 (holding that inappropriate Monica Lewinsky comments made to a student were sufficiently severe and pervasive to alter the conditions of a victim's educational environment for liability under § 1983 when those comments (1) were made continuously and during many periods of instruction; (2) "were more than mere joking comments or occasional vulgar banter"; and (3) were "embarrassing and offensive"). Though Doe may have been upset by the teachers' comments, Kerrville ISD's decision to release letters regarding Edwards's resignation, and the school decision to have the school resource officer monitor Doe, the standard here is an objective one. *See Sanches*, 647 F.3d at 167 ("The standard is not subjective; instead it is whether the harassment was severe, pervasive, and *objectively* unreasonable." (emphasis in original)).

Moreover, with the exception of reporting Ms. Jones's comment, Doe presented no evidence that she or her parents notified a person with supervisory authority regarding anything beyond a vague reference to Tivy teachers' behavior towards Doe. *See* Def.'s Ex. 37 ("Teachers have been a little catty about [Doe's] appearance though she's never dress coded."); Pl.'s Ex. 42 (Doe's P3 report regarding Ms. Jones's comment).

Further, regarding Ms. Jones's comment, the testimony presented at trial failed to support any inference that school administrators acted with deliberate indifference to Ms. Jones's comments. Specifically, Cook testified that he followed up with Ms. Jones regarding this comment and told her it was inappropriate to link Doe's response to a class assignment to her reputation at the school or Doe's sexual harassment by Edwards. This evidence does not support the inference

that Kerrville ISD acted with deliberate indifference. *See Doe ex rel. Doe v. Dallas Indep. Sch. Dist.*, 220 F.3d at 388 (holding that a school district failed to act with deliberate indifference based, in part, where school officials met with a teacher accused of harassment and warned the teacher of engaging in any harassing conduct).

Put simply, to survive a judgment as a matter of law, Doe must have presented evidence that an individual with supervisory authority had notice of alleged sexual harassment and then acted with deliberate indifference. *Doe v. Edgewood Indep. Sch. Dist.*, 964 F.3d at 358–59. But here, to the extent that Doe presented evidence of any actionable teacher-on-student harassment, Doe failed to present any evidence suggesting that an individual with supervisory authority acted with deliberate indifference towards known instances of Doe's harassment by teachers and school administrators. As such, no reasonable jury could find for Doe on this cause of action. Accordingly, the Court **GRANTS** Kerrville ISD's motion for judgment as a matter of law with respect to Doe's Title IX teacher-on-student harassment claim for alleged harassment by other teachers and school administrators.

### B.  Student-on-Student Sexual Harassment

"A school district that receives federal funds may be liable for student-on-student harassment if the district (1) had actual knowledge of the harassment, (2) the harasser was under the district's control, (3) the harassment was based on the victim's sex, (4) the harassment was 'so severe, pervasive, and objectively offensive that it effectively bar[red] the victim's access to an educational opportunity or benefit,' and (5) the district was deliberately indifferent to the harassment." *Sanches*, 647 F.3d 165 (quoting *Davis*, 526 U.S. at 650).

At trial, Doe presented evidence that (1) unspecified "rumors" circulated amongst the school body, (2) Doe's classmates called her sexual slurs on an unspecified number of occasions,

(3) Doe's classmates posted on social media about Doe's relationship with Edwards and Chatagnier, and (4) that other students blamed Doe for the firing of a favorable teacher.

"[T]o be actionable under Title IX, however, "the [student-on-student] harassment must be more than the sort of teasing and bullying that generally takes place in schools; it must be 'severe, pervasive, and objectively unreasonable.'" *Sanches*, 647 F.3d at 167 (quoting *Davis*, 526 U.S. at 652). Doe did not adduce sufficient evidence for a reasonable jury to find that the alleged verbal harassment was sufficiently severe, pervasive, and objectively unreasonable to be actionable. *See Davis*, 526 U.S. at 651–52 ("[I]n the school setting, students often engage in insults, banter, teasing, shoving, pushing, and gender-specific conduct that is upsetting to the students subjected to it.").

Moreover, to be held liable for student-on-student harassment, Kerrville ISD must have acted with deliberate indifference to known instances of severe, pervasive, and objectively unreasonable sexual harassment. *Sanches*, 647 F.3d at 169. However, the evidence presented at trial shows that when Kerrville ISD learned of any student-on-student harassment, Kerrville ISD investigated the harassment and reprimanded the responsible students. Def.'s Ex. 35.

Accordingly, the Court **GRANTS** Kerrville ISD's motion for judgment as a matter of law with respect to Doe's student-on-student verbal harassment claim.

### C. Retaliation

To establish Title IX retaliation, Doe must show that the district or its representatives took an adverse action against her *because* she complained of harassment. *Sanches*, 647 F.3d at 170 (citing *Jackson v. Birmingham Bd. of Educ.*, 544 U.S. 167, 174 (2005). That is, Doe must show that (1) she engaged in a protected activity; (2) she was subjected to an adverse action by Kerrville ISD's employees, who knew of Doe's complaint of sexual harassment; and (3) a causal link exists

between Doe's protected activity and Kerrville ISD's adverse action. *Henderson v. Bd. of Supervisors of S. Univ. & A&M Coll.*, 663 F. Supp. 3d 542, 564 (M.D. La. 2023).

For Title IX retaliation claims, an adverse action must be "materially adverse" such that it would dissuade a reasonable student from making or supporting a charge of discrimination. *Id.* at 565. In addition, Title IX retaliation liability requires that the actors must have actually known of the protected activity. *Trudeau v. Univ. of N. Tex.*, 861 F. App'x 604, 609 (5th Cir. 2021) ("We have indeed held that there must be evidence that 'the decisionmakers had knowledge of his protected activity' and that, absent such awareness, it cannot be said that 'the decisionmakers might have been retaliating against the plaintiff for having engaged in that activity.'").

It is undisputed that Doe engaged in a protected activity when she complained about Edwards in September 2017. *Henderson*, 663 F. Supp. 3d at 565 (reporting sexual harassment is a protected activity under Title IX).

At issue, however, is whether Doe presented sufficient evidence of a materially adverse action and a causal nexus between that adverse action and Doe's report of sexual harassment. At trial, Doe introduced evidence that (1) Ms. Starry said something that Doe considered embarrassing, (2) Ms. Jones commented on Doe's reputation in the school in the Spring of 2018, and (3) Doe was "dress coded" on multiple, unspecified occasions. Moreover, Doe introduced evidence that she voluntarily left JROTC and that she voluntarily left Tivy for Hill Country High School after Chatagnier resigned.

To begin, no retaliation could properly be based on Doe's withdrawal from JROTC or transfer from Tivy to Hill Country High School. Particularly, the testimony at trial established that Doe and her parents elected to have Doe withdraw from JROTC and ultimately transfer from Tivy

to Hill Country High School. These actions were not taken by Kerrville ISD and cannot support a claim of Title IX retaliation.

Next, assuming here that the teachers and administrators' remarks would dissuade a reasonable student from making or supporting charge of sex discrimination, no reasonable jury could find a causal nexus between the remarks and Doe's protected activity. Here, Doe failed to proffer any evidence at trial that either the allegedly retaliatory remarks or the school's enforcement of the dress code were *because of* Doe's report of sexual harassment by Edwards.

With respect to the unspecified embarrassing comments and comments regarding Doe's attire, Doe's evidence did not disclose that remarks were made *because of* Doe's report of sexual harassment. *See Trudeau*, 861 F. App'x at 609 ("However, even assuming arguendo that knowledge alone could be enough to infer causation on these facts, Trudeau fails to plausibly allege that UNT's "decision to [punish] was based in part on knowledge of [his] protected activity." (alterations in original)). Doe's father testified at trial that Doe began dressing differently after first being "dress coded." And Doe's father testified that he regularly received calls regarding Doe's attire even though he perceived that she dressed no differently than Doe's peers. But Doe presented no evidence that the dress code was disparately enforced against her after her report of Edwards's harassment. Indeed, based on the evidence presented at trial, none of the "dress code" conversations resulted in any sort of reprimand of Doe.

With respect to Ms. Jones's comments, the remarks were made approximately seven months after Doe's complaint about Edwards. Def. Ex. 66. Though Ms. Jones's comment allegedly referenced her relationship with Edwards, the evidence presented at trial does not allow that inference that Ms. Jones's comments were made because of her report of harassment by Edwards.

*Id.*; Pl.'s Ex. 42. Instead, Doe's own testimony conceded that Ms. Jones's comment was made because of an inappropriate response by Doe to a class assignment.

Accordingly, the Court **GRANTS** Kerrville ISD's motion for judgment as a matter of law with respect to Doe's Title IX retaliation claim.

### 2.   Section 1983 – Failure-to-Supervise Claim

To prevail on her failure-to-supervise claim for the deprivation of her substantive due process right to bodily integrity under the Fourteenth Amendment based on Chatagnier's abuse, Doe must show that (1) the Kerrville ISD Board of Trustees failed to adequately supervise Chatagnier in his interactions with students, (2) the Kerrville ISD Board of Trustees' failure to adequately supervise constituted deliberate indifference to Doe's constitutional rights, and (3) Kerrville ISD's failure to adequately supervise directly caused a violation of Doe's constitutional rights. *Zarnow v. City of Wichita Falls*, 614 F.3d 161, 170 (5th Cir. 2010); *Ashley G. v. Copperas Cove Indep. Sch. Dist.*, No. 6:19-CV-420-ADA-JCM, 2020 WL 7240392, at *4 (W.D. Tex. Dec. 9, 2020) ("In order for municipal liability to attach, plaintiffs must offer evidence of not simply a decision, but a 'decision by the [board] itself to violate the Constitution'" (quoting *Gonzalez v. Ysleta Indep. Sch. Dist.*, 996 F.2d 745, 759 (5th Cir. 1993)).[8]

For Kerrville ISD to be liable for failure to supervise, it must have been that "*the highly predictable consequence*" of not supervising school district employees was that the teachers would violate students' constitutional rights to bodily integrity. *See Peterson v. City of Fort Worth*, 588 F.3d 838, 850 (5th Cir. 2009) ("[I]t at least must have been obvious that 'the highly predictable

---

[8] While failure-to-supervise and failure-to-train claims are distinct, the elements of the two are the same. *See Edwards v. Oliver*, No. 3:17-CV-01208-M-BT, 2020 WL 4073764, at *10 (N.D. Tex. July 2, 2020), *report and recommendation adopted*, No. 3:17-CV-01208-M-BT, 2020 WL 4057540 (N.D. Tex. July 20, 2020). As a result, courts often address this analysis together. Although this Court previously entered summary judgment on Doe's failure-to-train claim in Kerrville ISD's favor, Doe's failure-to-supervise claim survived until trial because Kerrville ISD failed to raise the issue on summary judgment. *See* ECF No 82 at 23–29.

consequence' of not supervising . . . officers was that they 'would apply force in such a way that the Fourth Amendment rights of [citizens] were at risk.'" (quoting *Brown v. Bryan Cnty., OK*, 219 F.3d 450, 461 (5th Cir. 2000)).

At trial, Doe failed to adduce evidence demonstrating that the Kerrville ISD Board of Trustees was aware that Chatagnier posed a specific threat to Doe's constitutional right to bodily integrity or that they were aware or should have been aware of a similar pattern of constitutional violations by unsupervised employees. In other words, Doe provided insufficient evidence to show the Board of Trustees was on notice that its allegedly defective supervision policies would cause its staff to violate students' rights.

Though Doe produced evidence showing that she was previously sexually harassed by Edwards, even assuming the Board of Trustees was aware of this incident, knowledge of this previous incident of sexual abuse is insufficient to establish governmental liability. *Malone v. City of Fort Worth*, 297 F. Supp. 3d 645, 656–57 (N.D. Tex. 2018) ("The need for more or different training or supervision must be so obvious, and the inadequacy so likely to result in the violation of constitutional rights, that the policymakers of the city can reasonably be said to have been deliberately indifferent to the need, and the failure to provide proper training or supervision may fairly be said to represent a policy for which the city is responsible." (internal quotation marks and alterations omitted)). Indeed, after learning of the incident between Doe and Edwards, school officials conducted additional training of staff and stressed the importance of maintaining professional boundaries with students. Def.'s Ex. 51.

No reasonable jury could conclude that the violation of Doe's constitutional rights was the highly predictable consequence of the allegedly inadequate supervision. As such, the Court

**GRANTS** Kerrville ISD's motion for judgment as a matter of law with respect to Doe's § 1983 failure-to-supervise claim.

## CONCLUSION

For the foregoing reasons, Defendant's motion for judgment as a matter of law (ECF No. 129) is **GRANTED** and Plaintiff's claims are **DISMISSED WITH PREJUDICE**. A final judgment pursuant to Rule 58 will be issued separately.

It is so **ORDERED**.

**SIGNED** this 19th day of April, 2024.

_____
XAVIER RODRIGUEZ
UNITED STATES DISTRICT JUDGE